35 N.J. Super. 185 (1955)
113 A.2d 535
IN THE MATTER OF THE APPLICATION OF ANDERSON B. RODGERS FOR A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided April 19, 1955.
GAULKIN, J.C.C.
This is a petition by a prisoner for a writ of habeas corpus. Pursuant to R.R. 1:12-9(d) I assigned counsel for the purpose of a preliminary review of the petition, who reported to me that it was his considered opinion that the petition "is without foundation or merit." Thereupon, as I am required to do, I made an independent examination of the petition and of the records.
The petition is verified by an affidavit which states that "after having all allegations read very carefully to me, I * * * find all the allegations of this petition to be true to the best of my knowledge and belief" (italics mine).
*186 When a petition for habeas corpus is based on matters of law, such an affidavit probably would be accepted without any question. However, when the petition is based on matters of fact, and especially where those matters of fact are charges as serious as those contained in this petition, and the statements if true must necessarily be within the personal knowledge of the petitioner, the affidavit should state flatly that those charges are true, and not that they are made "to the best of my knowledge and belief." The court is not obliged to accept such an affidavit. R.R. 4:44-4; State v. Tune, 13 N.J. 203 (1953); Maplewood Township v. Margolis, 102 N.J. Eq. 467 (Ch. 1928), affirmed 104 N.J. Eq. 207 (E. & A. 1928); cf. R.R. 4:58-6. The allegations of this petition illustrate the importance of enforcing that rule here.
The petition recites that "the cause or pretence of my confinement and restraint according to the best of my knowledge and belief is:
"Under an illegal sentence as imposed upon me by the Essex County Court, such imposition is for the alleged crime of (Assault with Intent to Rob) one Dominick Neri * * *."
The truth is that the defendant is serving a sentence for murder, which he does not mention at all in his petition. He had been sentenced October 18, 1944 to serve a term of not less than 8 or more than 12 years for assault with intent to rob, but that term had been completely served prior to the filing of the present petition. At the time of the filing of this petition, defendant was serving a term of 15 to 20 years for murder, imposed in 1946 in Burlington County, consecutive to the 8- to 12-year term which had been imposed in Essex County. That murder sentence defendant is still serving.
Apparently the petitioner hopes that by voiding the sentence for assault with intent to rob, he will receive credit for the time he has served upon his sentence for murder. U.S. v. Morgan, 346 U.S. 502, 74 Sup. Ct. 247, 98 L.Ed. 248 (1954).
There is no record that the prisoner made any previous complaint, though he has been in custody 11 years. His excuse is that he was illiterate, very young, and ignorant of *187 his rights when he was arrested in Essex County in 1944, and (inferentially) that he has just become aware of his rights. However, it is to be noted at the outset that before his arrest in Essex County he had spent four years in prison for assault with intent to rape, and some time in the Essex County Penitentiary for assault and battery. He was therefore hardly unfamiliar with the operation of the criminal law. Cf. State v. Cynkowski, 10 N.J. 571 (1952).
In his petition, he claims that he is innocent. The assault with intent to rob was in an attempt to hold up a tavern. From the petition it is not clear whether he claims he did not do it, or whether he says he was too drunk to know what he was doing. In any event, he says he walked out of the tavern unaware of any attempted robbery, and that "upon my getting outside no body bothered me I walked down the street and was about two blocks away from the tavern when a police car came out of a side street and the officers stopped me and told me to get in the car which I did." The prosecutor's file, on the other hand, shows that defendant fled, and that shots were fired to bring him to a halt. I mention the contents of the prosecutor's file, not because I accept them as true in this proceeding, but again merely to show the importance of having the petitioner unequivocally swear to his statements.
The petitioner then sets forth that in police headquarters he was beaten by unnamed officers. There, he says, he signed "some papers," the contents of which he says he did not know  presumably a confession  but the petition seems to say that these papers were signed not because of the beating, but because a detective told him "that if I would sign I could go home." However, it may be that petitioner meant to say that he signed the "papers" because of both the beating and the representation that upon signing them he would go free. If the "papers" were a confession, it was not used against defendant, for defendant pleaded non vult, as we shall see.
In any event, defendant did not go free after signing the "papers" at police headquarters, as the detective allegedly promised him. On the contrary, the petitioner himself says:
*188 "This was on Saturday they did not let me out but instead the following Monday morning they took me back to the first precint [sic] I was taken before a Police Judge there and he asked me how I plead I told him Not Guilty. I was held for the Grand Jury. That afternoon I was taken to the Newark street jail where they left me about two weeks later again was taken to court where I plead not guilty (probably to the accusation. Defendant had signed a waiver of indictment on September 8, 1944  E.G.). I was taken back to the jail about two weeks later I was again taken to Court" (probably September 28, when he pleaded non vult  E.G.).
We see then that in spite of the alleged beating, he pleaded not guilty before the police judge. Immediately after the arraignment, he was taken to the county jail, where he stayed from September 5 to October 18. He does not claim, nor even suggest that he was mistreated at the county jail. He first pleaded not guilty to the accusation. Counsel was thereupon assigned to him, and on September 28, 1944, in the presence of assigned counsel, defendant retracted his plea of not guilty and entered a plea of non vult before Judge Dallas Flannagan, now deceased. The transcript of this session of the court of that date, after reciting the presence of Mr. Schultz, legal assistant to the prosecutor, and counsel for defendant, reads as follows:
"MR. SCHULTZ: I understand you desire to retract your plea of not guilty and enter a plea of non vult to this allegation charging you with assault with intent to rob?
THE DEFENDANT: Yes.
MR. SCHULTZ: You understand a plea of non vult is practically the same as a plea of guilty and you throw yourself on the mercy of the court?
THE DEFENDANT: Yes.
THE COURT: Non Vult."
Petitioner says, seemingly referring to assigned counsel:
"A man came to see me and told me he was a state lawyer and he told me if I would give him 50 dollars he would get me out, I told him that I did not have any money and did not know where I could get any, I did not see him again till I was taken to court when he came to the bull pen to tell me that if I did not plead guilty I would get a lot of time I was scared and did not know what to do so I had to do as he had said on that same day I was sentenced to from 8 to 12 years on the charge of Assault with intent to Rob. when I went to court I did not have any lawyer and was not asked if I had one or if I wanted one."
*189 As a matter of fact, he was not sentenced on the day he pleaded. He was not sentenced until October 18, 1944, 17 days later. In the meantime the probation office had made a pre-sentence investigation and report to Judge Flannagan. In the course of the pre-sentence investigation, the probation office interviewed the defendant. He made no complaint of the treatment given him nor did he protest his innocence.
Members of the bar who accept the task of representing indigent defendants at the request of the court receive no compensation. Their task is frequently onerous, but it is to the credit of the bar that, without demur, lawyers give freely of their valuable time to defend indigent defendants diligently and faithfully. Allegations such as this prisoner makes against his counsel, a member of the bar in good standing, should be sworn to without qualification, so that the court may know that the petitioner understands clearly what he is saying and realizes that if his sworn statement is false he may suffer the consequences of false swearing. I do not mean to infer that a petition and affidavit such as this, if false, may not be the basis of an indictment for false swearing. State v. Sullivan, 25 N.J. Super. 484 (App. Div. 1953); State v. Dayton, 23 N.J.L. 49 (Sup. Ct. 1850); N.J.S. 2A:131-3 and 4; R.S. 41:3-1. What I do mean is that the Court should not grant a hearing on charges such as these without at least the assurance that the petitioner means what he says in his petition; that he is willing to swear to it without equivocation; and that he is willing to suffer the consequences if he swears falsely.
This, of course, is true of any false statement in a petition for habeas corpus. I emphasize it with relation to allegations against assigned counsel only because, it seems to me, the least the court can do is to protect assigned counsel against reckless accusations.
For the reasons above set forth, the petition is dismissed without prejudice to petitioner's right to file a new petition, properly sworn to, setting forth such facts as the petitioner is willing to swear to without qualification.