64 N.J. Super. 232 (1960)
165 A.2d 814
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALLEN GAILES, DEFENDANT-APPELLANT.
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES B. FAISON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1960.
Decided November 28, 1960.
*234 Before Judges GOLDMANN, HANEMAN and FOLEY.
Mr. Paul R. Huot argued the cause for defendant-appellant Allen Gailes.
Mr. Arnold A. Hart argued the cause for defendant-appellant James B. Faison.
Mr. William C. Brudnick, special assistant prosecutor, argued the cause for plaintiff-respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
PER CURIAM.
Both defendants appeal from the denial of hearings on applications for writs of habeas corpus. Faison also appeals from the denial of a hearing on his motion to withdraw pleas of non vult. Gailes asserts that his petition for a writ of habeas corpus should be considered as including a motion to withdraw his pleas of non vult.
On August 15, 1958 defendants were jointly indicted for the murder of one Jacob Sayers on August 12, 1958 and entered pleas of not guilty thereto on August 26, 1958. They were then represented by retained counsel.
They were also jointly charged with two armed robberies which were alleged to have occurred on August 8, 1958. Both defendants waived indictment and trial by jury and filled out and executed Criminal Procedure Form 13A. Additionally, Gailes was charged with three larcenies (N.J.S. 2A:119-2), a breaking, entering and larceny (N.J.S. 2A:94-1), malicious mischief (N.J.S. 2A:122-1), and atrocious assault and battery while armed (N.J.S. 2A:90-1, N.J.S. 2A:151-5), on which he waived indictment and trial by jury, first having executed form 13A.
*235 On October 24, 1958 defendants were arraigned on the accusations charging armed robbery, and pleaded guilty thereto. The trial judge, who, incidentally, is the judge whose action herein is reviewed, interrogated the defendants meticulously concerning their understanding of the charges, their willingness to enter the pleas, and their satisfaction with the services rendered to them by their respective counsel. Their answers left no doubt that the pleas were informedly made, completely voluntary, and that the services of counsel were satisfactory to them. The pleas were accepted. Gailes' pleas of guilty to the accusations of larceny, breaking, entering and larceny and malicious mischief were likewise accepted, after thorough questioning of this defendant by the court. Application was also made for the dismissal of the armed atrocious assault and battery charge, upon the ground that the offense was merged in one of the robbery charges, to which defendant had pleaded guilty.
Both men also tendered pleas of non vult to the murder indictment. The court took these offers under advisement.
On November 21, 1958, the date set for sentencing on the accusations, defendants through counsel renewed their offers of non vult pleas to the murder indictment. Again both men were carefully interrogated by Judge Schneider and the record reveals beyond the slightest doubt that each fully comprehended the nature of the charge, and the effect of the plea of non vult. Moreover, it is clear beyond debate that both acknowledged satisfaction with counsel, and complete voluntariness of action. Prior to sentencing the men were specifically asked if they had anything they desired to say  both replied "no." Thereupon the court sentenced on all pending charges. Our careful scrutiny of the various stages of the proceedings herein alluded to convinces us that Judge Schneider, aware of the serious plight in which defendants found themselves, left no stone unturned in satisfying himself of the propriety of imposing sentences in the matters, and in so doing surrounded the rights of the defendants with every possible protection.
*236 In a letter dated January 16, 1959 Faison informed the judge that he intended to appeal on the grounds of illegal sentence and denial of due process, and requested that the court direct the clerk to send him copies of the indictment and minutes of sentencing. On January 19, 1959 in reply the court noted that Faison had pleaded after close questioning and advised him that if he desired to apply to withdraw the pleas he might prepare a petition setting forth the reasons on which he relied. As of January 31, 1959 Faison wrote at length to the judge renewing his request for copies of the indictment and other official records, and complaining of his lack of understanding of the proceedings on sentence, the "unfaithfulness and dereliction" of duty of the attorneys for Gailes, confusion and "fear" throughout the period of his detention generated by "talk" of the electric chair, and misguided advice by his counsel to plead non vult because of a confession given to the prosecutor by Gailes at the "insistence" of the latter's lawyer. The letter was climaxed by Faison's assertion that he was guilty of none of the crimes to which he had pleaded guilty or non vult. On April 15, 1959 the judge forwarded copies of the documents requested and informed the defendant that he was of the opinion that it would be a "waste of time" to conduct a hearing on an application to retract because he "would never grant it."
Meanwhile, Faison applied to this court for leave to appeal in forma pauperis. The application was denied.
On August 6, 1959 he filed a complaint "in lieu of prerogative writ." In effect this was an application for a writ of habeas corpus and was so treated. Therein Faison set forth at length charges that (a) the conduct of his counsel was so derelict that he was substantially denied his constitutional right to be represented by counsel, (b) that the conduct of the prosecutor and his assistants was likewise derelict and tended to show a "conspiracy between defense counsel and the prosecution," and also that the convictions were the result of "fraud," (c) that his counsel *237 divulged to prosecutor "confidential information" given to him by defendant, and that such disclosure "effected" the convictions, (d) that the trial court having knowledge of this was derelict in its duty to censure defense counsel and the prosecutor, (e) that the convictions were based on "defective procedures" in the "actions" of or "lack of action" by the trial court in violation of his constitutional right to a "fair and impartial trial."
We pause to observe at this point that none of these caustic conclusions was buttressed by a single allegation of fact. The trial court denied the application for a hearing, and in a written opinion outlined in detail its reasons therefor. The court pointed out that defendants had been represented by two "of the best and ablest counsel" practicing in the criminal courts of the county, that the application of these counsel for leave to enter the pleas of non vult to the murder indictment had been deliberated upon by the court for almost two months before they were accepted, and that the pleas were accepted and sentences were imposed only after the court had exhausted every avenue of interrogation in order to satisfy itself that they were offered voluntarily and intelligently.
This court denied defendant's application for leave to appeal from this determination. Thereupon Faison appealed to the Supreme Court which remanded the cause to this court with the direction that leave to appeal be granted and that the appeal be determined on its merits. Thereafter present counsel were assigned to both defendants.
On December 9, 1958 Gailes wrote to the sentencing judge that "when I gave the confession I not only confessed to Mr. Calissi but to God also, and your Honor, I'd like to thank you very much for sparing my life, because the crime I committed I realize we could have paid with our lives." However, by May 19, 1959 he suffered a change of heart. On that date he wrote to the court requesting the assignment of counsel and stenographic transcripts of the proceedings. An affidavit accompanied the application which *238 alleged that he had been wrongfully convicted because of the "extreme dereliction of duty" on the part of his attorney in conspiring with the prosecutor to deny him his right to a fair trial and in revealing to the prosecutor a "certain privileged communication." The court denied the application and the appeal from its order was likewise denied by this court. Subsequently he made application for a writ of habeas corpus in a complaint in lieu of prerogative writ. The essential allegations of the grounds relied on are identical with those in the Faison complaint and no purpose would be served in restating them. The trial court denied a hearing thereon and leave to appeal was denied by this court. As in the Faison case, the Supreme Court remanded and directed us to hear the merits of the appeal.
With respect to the denial of hearings on the applications for writs of habeas corpus the cases of both defendants are controlled by the same authorities. The pertinent habeas corpus procedure is outlined in N.J.S. 2A:67-17 as follows:
"The judge to whom the application is made shall grant such writ without delay or issue an order directing the defendant named in the complaint to show cause why the writ should not be granted, unless it appears from the complaint or otherwise that the applicant or person confined or restrained is not entitled thereto." (Emphasis added)
The writ of habeas corpus is available only to attack a conviction on the limited ground that the trial court lacked jurisdiction and that the conviction was therefore void. State v. Cynkowski, 10 N.J. 571, 576 (1952). If defendants herein were convicted upon pleas of guilty and non vult, fairly entered, no jurisdictional defect appears; if, however, the pleas were entered under circumstances which rendered their acceptance fundamentally unfair, the resulting convictions violated "due process," and they were beyond the court's jurisdiction. Id.
We have outlined the allegations upon which defendants posit their applications for hearings. Defendants contend that these allegations prima facie entitle them to a hearing *239 on their applications. We will bypass for present purposes the provocative question of whether the conclusory nature of the allegations should be deemed the equivalent of a factual showing spelling out illegal detention.
Ordinarily if the application alleges facts sufficient to warrant issuance of the writ, it should be issued and a hearing had on the return. State v. Lenkowski, 24 N.J. Super. 444, 447 (App. Div. 1953). The issuance of the writ is not to be denied because the allegations of a petition are "suspected to be the false and improbable products of a cultivated imagination." Id., at p. 448. Nor may it be denied on the basis of information obtained by the court as a result of its own investigation of ancillary circumstances bearing on the matter. In re Leibowitz, 43 N.J. Super. 579, 583 (App. Div. 1957). But there is an exception to the general rule. Where the disclosures of official files and records refute the factual allegations of a verified application the application may be denied. State v. Raicich, 30 N.J. Super. 316, 321 (App. Div. 1954). Compare State v. Zachowski, 53 N.J. Super. 431 (App. Div. 1959). The allegations of defendants herein may be compressed into this thesis: They did not intelligently or voluntarily enter their pleas of guilty and non vult. All else they charge is merely in support of this thesis, and even if true would be of no moment if defendants truthfully, and with full understanding of the consequences of their pleas, entirely of their own volition acknowledged their guilt and submitted themselves to sentencing. The official records of the court, i.e., the minutes taken on the pleas and sentences, and the forms hereinabove referred to, completely negate the allegations of innocence, lack of understanding, and coercion, which they now project in their complaints, and the court upon this basis properly denied the applications for writs of habeas corpus and hearings upon said applications.
We have purposely avoided discussion of the effect of the trial judge's personal knowledge of the events memorialized by the records, since the latter are unequivocal and *240 could only have impelled the same conclusion as that reached by the trial judge, even if the judge to whom the applications were presented had theretofore been a stranger to the proceedings. However, we find no reason in logic why the personal knowledge of the judge gained in the course of his supervision of the proceedings of record under attack should not be taken into account by him, particularly where it is completely consonant with official documentation. This is quite different from knowledge gained by independent judicial investigation revealing facts of which the judge may not have been previously aware, as in Leibowitz, supra.
Finally it should be noted that the complaints are verified only "to the best of my knowledge and belief." Faced with such a verification, the court in In re Rodgers, 35 N.J. Super. 185, 186 (Cty. Ct. 1955) dismissed an application for a writ stating:
"When a petition for habeas corpus is based on matters of law, such an affidavit probably would be accepted without any question. However, when the petition is based on matters of fact, and especially where those matters of fact are charges as serious as those contained in this petition, and the statements if true must necessarily be within the personal knowledge of the petitioner, the affidavit should state flatly that those charges are true, and not that they are made `to the best of my knowledge and belief.' The court is not obliged to accept such an affidavit. * * *; State v. Tune, 13 N.J. 203 (1953); * * *."
Obviously, little would be gained by remanding these petitions for proper form as was done in Rodgers. We have therefore disposed of the petitions on their merits and overlooked this, as well as other procedural niceties.
Faison urges the court erred in not granting him a hearing on this motion to withdraw his pleas of guilty and non vult and in "prejudging" the motion. Gailes contends his petition for habeas corpus should be considered as a motion to withdraw his pleas of guilty and non vult and, further, that the court erroneously accepted his pleas. The most expedient manner of dealing with these contentions is to determine under our original jurisdiction (R.R. 1:5-4) *241 whether the pleas were improperly entered and whether the motions should be granted. We thus give Gailes the benefit of disregarding the procedural defects, and Faison the benefit of his allegation that his motion was "prejudged."
The applicable rule (R.R. 3:7-10 (a)) provides:
"A motion to withdraw a plea of guilty or of nolo contendere or of non vult, may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea * * *."
In State v. Torzillo, 61 N.J. Super. 253, 261 (App. Div. 1960) we said:
"A motion to withdraw a plea of non vult should be denied where the plea was entered by defendant or by his counsel in his presence, if defendant knew and understood what was being done and there was absent any circumstance of force, mistake, misapprehension, fear, inadvertence or ignorance of his rights and of the consequences of his plea. * * *"
In view of the record previously reviewed, we can reach no other conclusions but that there was no manifest injustice in the entry of the pleas and the test set forth in Torzillo has been fully met.
The application for writs of habeas corpus and the motions to withdraw the pleas are denied.