## THE STATE v. DAYTON.

1. An application to quash an indictment for insufficiency on the part of the defendant is not a matter of right, but only allowed at the discretion of the court.

2. At common law, perjury could not be committed in making an affidavit not taken in a judicial proceeding.

3. The word "deposition," in the 23d section of the act for the punishment of crimes, must be construed in its strict sense, and does not include a mere affidavit.

4. The act relative to oaths and affidavits makes false swearing, in any lawful oath taken in pursuance of that act, to be perjury.

5. Perjury cannot be committed in an official oath.

6. That an indictment was found by the grand jury upon illegal evidence, or without legal evidence, cannot be taken advantage of by the defendant on a motion to quash by plea in abatement, or in any other way. The court may, where the administration of justice requires it, in their discretion quash an indictment for misconduct in the grand jury.

7. It is not necessary to aver that the facts on which perjury is assigned are material, if their materiality sufficiently appears from the face of the indictment.

8. Perjury may be assigned upon an oath or affidavit, which is insufficient to effect the purpose for which it was taken, without additional proof. And it is not necessary to show or aver that such additional proof was made.

9. It is not necessary that an affidavit required by statute should be in the words of the act : if the substantial requirements of the act are embodied in it, it will be sufficient, and perjury may be assigned upon it.

10. It is not necessary, in averring the authority of an officer to administer an oath in an indictment for perjury, to aver that he "then and there" had authority, if time and place had been added to the act of taking the oath before him.

11. It is not a fatal objection against an indictment that it concludes against the form of the "statute," instead of the "statutes," when there are more than one, nor that the name of a grand juror in the caption does not correspond with his name in the panel, nor that the indictment is stated as found upon the *oaths*, instead of the *oath* of the inquest.

This was an indictment for perjury, found against the defendant, Harvey Dayton, cashier of the State Bank at Morris, at the Morris county Oyer and Terminer, at November term, 1849, and removed into this court by *certiorari*. A motion was made, on part of the defendant, to quash the indictment, both for defects upon its face and because the grand jury found the indictment without any legal or competent evidence of the fact of taking the oath. And by affidavits, taken in pursuance of a rule of this court for that purpose, it appeared that

there had not been before the grand jury any legal or competent evidence of the fact, that the defendant had sworn to the affidavit on which perjury was alleged, the only proof being a certified copy of the affidavit and *jurat* under the seal of the secretary of state, in whose office the original was filed.

The indictment was for perjury, in taking an affidavit required by the 4th section of an act, passed February 14, 1849, entitled, " An act for the relief of the President, Directors, and Company of the State Bank at Morris," which section is as follows : 

" *And be it enacted,* That the said bank shall not resume or carry on any banking operations or business until the president and cashier of said bank shall make and file in the office of the secretary of this state their affidavit or solemn affirmation that said bank has *bona fide* a cash capital for banking purposes amounting to at least forty thousand dollars."

It alleged that the defendant was cashier of said bank, and that the taking and filing of such affidavit was material for the bank to resume its business, and that the defendant, at, &c., on, &c., did take and subscribe his solemn oath in writing, before C. E. S., one of the masters in chancery in this state, " he, the said C. E. S., having competent power and authority, as such master in chancery, to administer an oath to the said H. D. in that behalf." And that the defendant, in said oath, did depose and swear " that he is the cashier of the State Bank at Morris, and that the said bank has a *bona fide* cash capital for banking purposes amounting to at least forty thousand dollars." The perjury alleged was, that the bank had not at that time a cash capital amounting to forty thousand dollars.

Argued before the CHIEF JUSTICE and Justices RANDOLPH and OGDEN.

*Elmer,* Attorney General, for the state ; *F. T. Frelinghuysen* and *A. C. M. Pennington,* for defendant.

*Frelinghuysen,* for defendant.

1. The grand jury found this indictment upon illegal or insufficient evidence. It is shown by the depositions that neither

the master who administered the oath, nor the affidavit itself, was before the grand jury. *Const. of N. J.*, art. 1, § 9 ; 1 *Chit. Cr. Law* 301–2, 317 and 318, *note a ;* 2 *Gall.* 364 ; *Russ. & Ryan* 401 ; 3 *Owen's Phil. Ev.* 1575.

2. The affidavit on which perjury is assigned does not appear by the indictment to be material ; this is not the oath averred to be material ; the only averment is, that *an* oath, not *this* oath, was necessary. The averment of materiality is not laid with time and place. 2 *Hawk. ch.* 25, § 77.

It does not appear that the bank was suspended or wished to resume, or that it authorized affidavit.

3. There is no sufficient averment of authority of the master to administer *that* oath (7 *T. R.* 315 ; 1 *Hawk. ch.* 69, § 3,) or *where* and *when* he had authority.

4. This oath is not authorized by the act. It only authorizes *one* oath, by president and cashier ; this is by cashier alone. The act directs an oath " that it has *bona fide* a cash capital," the oath is " that it has a *bona fide* cash capital."

5. This oath is not one in which perjury can be committed. To constitute perjury at common law, the oath must be in some judicial proceeding. 3 *Coke's Inst.* 164 ; 1 *Hawk. P. C. ch.* 69, § 1 ; *Com. Dig., Justice of Peace B.*, 102 ; 5 *Bac. Abr. Perjury.*

It is not perjury by the statute concerning crimes (*Rev. Stat.* 262, § 22), the only term to embrace it is deposition ; this affidavit is no deposition. 1 *Jac. Law Dict.* 248, *Deposition ;* 1 *Gall.* 497, *U. States* v. *Clark.*

6. Indictment is uncertain and inartistic ; a " bank " is not a term of definite legal meaning.

7. The name of one juror is misstated in the caption. 2 *Hawk. ch.* 25, § 126 ; 2 *Keble* 470, 61.

*Attorney General,* in answer.

1. False swearing on this affidavit is made perjury by the act of 1839 respecting oaths and affidavits. *Rev. Stat.* 871, § 2.

This affidavit is made by authority of law and for a lawful purpose.

2. The precedents do not require an averment that officer

State v. Dayton.

had authority to administer *this* oath.    2 *Chitty's Cr. Law* 335, 356.

3. The oath is according to the statute; in fact it is a joint oath, and is here purposely charged.    The transposition of the words is immaterial.

4. This may be held to be perjury, even under the 23d section of the act concerning crimes.    2 *Conn. R.* 30; 9 *Pet. R.* 247 and 238, *U. States* v. *Bailey.*

5. The error of name in caption does not void the indictment. 4 *Halst.* 296, *State* v. *Rickey; Wharton's Am. Cr. Law* 124; 4 *Greenl. Rep.* 439; 2 *Hawk. ch.* 25, § 145, *n.*

*Pennington* in reply

1. The variance in the name of the juror is material, *Hilliard* and *Hillard* are not *idem sonans.    Wharton's Cr. Law* 72; 2 *Hawk. ch.* 25.

2. The grand jury cannot indict without *legal* evidence.    There was no legal proof; this indictment was found upon *hearsay.*    1 *Chit. Cr. Law* 318, 319; 2 *Wood's Lectures* 333, note; 10 *Mod.* 195; 4 *Bl. Com.* 303; 3 *Camp.* 401; 1 *Sch. & Lefr.* 232; 2 *Selwyn* 315.

3. The authority of the officer must be averred.    8 *Wend.* 636; *Whart. Prec.* 278; 1 *Chit. Cr. Law* 194 and 219.

4. There is no averment by which it appears that this affidavit was material or was ever used.

The terms "a *bona fide* cash capital" and "*bona fide a cash capital*" are essentially different, and if so, this affidavit was not authorized by law.

6. It does not appear, by *direct averment,* that the oath was taken after the passage of the act.    2 *Chit. Cr. Law* 307; 1 *Gall.* 387; 2 *Wash.* 328.

The CHIEF JUSTICE delivered the opinion of the court.

This is an application, on the part of the defendant, to quash an indictment for perjury.    It is in all cases a matter of discretion whether the court will quash an indictment, or put the party to his plea or demurrer, or leave him to a motion in arrest of judgment.    2 *Burr.* 1127; *Com. Dig. Indictment H.;*

State v. Dayton.

1 *Chit. Cr. Law* 299; *State* v. *Hageman,* 1 *Green* 314; *Wharton's Cr. Law* 131.

The application is almost uniformly denied by the English courts in cases of treason, felony, and other high crimes. In *Rex* v. *Belton,* 1 *Salk.* 372, Holt, C. J., said, we never quash indictments for perjury. *Com. Dig. Indictment H.;* 1 *Chit. Cr. L.* 300.

In this country the courts have lent a more ready ear to applications to quash, as being less dilatory and expensive than other modes of proceeding. But still they are by no means *ex debito justitiæ,* and there are strong considerations of public policy why they should not be granted in the higher grade of crimes, except for substantial reasons, and then only in cases entirely clear of doubt. *State* v. *Hageman,* 1 *Green* 323; *The People* v. *Eckford,* 7 *Cowen* 535; *Wharton's Cr. Law* 131; 1 *Chit. Cr. Law* 300.

Where the facts charged in the indictment clearly constitute no crime; where the court in which the indictment is found have no jurisdiction of the offence; where it appears upon the face of the indictment that the prosecution is barred by lapse of time, or where, for any cause, it is manifest that no judgment can be rendered on the indictment, there is obvious propriety in not putting the defendant to the expense and vexation of a trial. But when the exception is purely technical, in no wise affecting the merits of the controversy, there would seem to be no good reason why the court should exercise its discretionary power in aid of the defendant. Some of the objections relied upon in this case do not call for the interference of the court. But inasmuch as the counsel of the state not only waived all objection to the application, but united with the defendant's counsel in desiring that all the points should be summarily disposed of, all the grounds of objection to the indictment will be now considered and decided. The suggestion is necessary to guard against the action of the court being drawn into precedent.

Perjury in this case is assigned upon an affidavit made by the defendant, as cashier of the State Bank at Morris, under the fourth section of an act for the relief of " the President, Di-

rectors, and Company of the State Bank at Morris," approved
14th Februray, 1849, (*Pamph. Laws* 51). The section enacts
that the said bank shall not resume or carry on any banking
operations or business until the president and cashier of the
said bank shall make and file in the office of the secretary of
this state their affidavit or solemn affirmation *that said bank
has bona fide a cash capital for banking purposes amounting to
at least forty thousand dollars*. There is no provision in the act
that false swearing in taking the affidavit shall constitute per-
jury. It is insisted that even if the affidavit be false, the
person taking it is not guilty of *perjury*.

The taking of a false affidavit under the act most clearly
does not constitute perjury at the common law, which is limit-
ed exclusively to oaths administered in some *judicial* proceed-
ing. 3 *Inst.* 164; 4 *B. C.* 137; 1 *Hawk. P. C. Book* 1, c. 69,
§ 1.

Nor does it appear to come within the provision of the 23d
section of the act for the punishment of crimes. *Rev. Stat.* 262,
§ 23. The term "deposition," it is true is sometimes used,
both in common parlance and in legislative enactments, as sy-
nonymous with "affidavit" or "oath." It is thus defined by
Webster. It is obviously so used by the legislature in the act
to authorize the president of the Council of Proprietors in
West Jersey to administer oaths and affirmations to witnesses
in certain cases. *Rev. Stat.* 787, § 2. But in its more techni-
cal and appropriate sense it is limited to the written testimony
of a witness given in the course of a judicial proceeding, either
at law or in equity. *Jac. Law Dict.* "*Deposition;*" *Bouvier's
Law Dict.* "*Deposition.*"

In this restricted sense it appears, from the context, to have
been used by the legislature in the definition of the crime of
perjury, in the act for the punishment of crimes. To give to
the word "deposition," as used in that act, its more compre-
hensive sense, would extend the crime of perjury even to offi-
cial oaths, which could never have been within the contem-
plation of the legislature. If the legal criminality of the de-
fendant depended upon the provisions of this act alone, the
indictment could not be sustained. But the provisions of the

act relative to oaths and affirmations (*Rev. Stat.* 871) are much more comprehensive. The act designates the officers before whom may be taken " all oaths, affirmations, and affidavits required to be made or taken by any statute of this state, or necessary or proper to be made, taken, or used in any court of this state, or for any lawful purpose whatever, excepting official oaths, oaths required to be taken in open court or upon notice." The second section then provides that if any person shall wilfully and corruptly swear or affirm falsely, in or by any oath, affirmation, or affidavit, made or taken in pursuance of this act, such person shall be deemed guilty of perjury, and punished accordingly. The primary design of the act was undoubtedly to ascertain the officers before whom oaths, affirmations, and affidavits might lawfully be taken, and to subject persons taking false oaths or affirmations before such officers to the penalties of perjury. It may not have been within the contemplation of the legislature either to define the crime of perjury, or to extend or limit its application. Yet such, it cannot be denied, is the necessary effect of the language they have used ; and such must be the construction of the act, unless such construction leads to consequences which it is manifest the legislature never could have contemplated. We see no ground upon which the court can avoid the plain and literal construction of the act. Indeed some countenance is given to the idea that the legislature contemplated such construction by the fact, that they have exempted from its operation official oaths, apparently for the sole purpose of exempting them from the penalties of perjury. The oath in question is clearly within the provisions of this statute. It is made necessary by a statute of this state, and is taken before one of the officers designated in the act.

II. It is further objected that the indictment is not found upon evidence produced before the grand jury. In support of the objection, two affidavits, taken in pursuance of notice, have been laid before the court; one made by the officer before whom the affidavit upon which the perjury is assigned purports to have been taken, stating that he was not a witness before the grand jury ; the other made by the secretary

of state, stating that the original affidavit was filed in his office on the 21st of August, 1849, and has not been off the files since that time ; that he had not been subpœnaed to produce the original or a sworn copy before the grand jury of the county of Morris, and that, to his knowledge or belief, the original affidavit was not before the grand jury.

These affidavits are incompetent upon this motion, and were so held by this court in the case of *The State* v. *Rickey*, 4 *Halst*. 296. But, in compliance with the request of counsel, we do not place our opinion upon this ground.

Admitting the evidence to be competent, they do not establish the proposition upon which the defendant rests, *viz*. that there was no legal evidence before the grand jury in support of the indictment. They show that neither the original affidavit, nor the officer before whom it was taken, was before the grand jury. But it is easy to conceive of other competent evidence, upon which the grand jury may have acted. If a copy of the affidavit had been produced before the grand jury, coupled with proof of the admission of the defendant, that he took the affidavit of which the paper produced was a true copy, would not that have been sufficient to warrant the finding of the grand jury ? But conceding that the proposition is fully established, that there was not legal and competent evidence before the grand jury, does that afford the subject matter to sustain either a motion to quash or a plea in abatement ? We are clearly of opinion, that in this state, at least, it does not. If the position be sound, that every indictment not found upon the production of legal and competent evidence before the grand jury is essentially vicious, it follows that in all cases where the witnesses produced before the grand jury are from any cause legally disqualified or incompetent to testify, or where any essential link in the chain of testimony is sustained by evidence not in itself legal, the indictment cannot be sustained, although there be ample competent testimony, not produced before the grand jury, to sustain the charges of the indictment. If it be true, as insisted for the defence, that it is the constitutional right of every defendant not only that he shall be presented by a grand jury, but that such presentment shall be founded

only upon legal and competent evidence, it would seem to follow that in all cases he should have an opportunity of availing himself of the objection, and, as a necessary consequence, that the witnesses should be examined in open court, that the defendant might know not only by whom, but by what evidence the indictment is sustained. It would neither be consistent with law nor with justice to deprive the party of a legal objection, by permitting the witnesses to be sworn, and the evidence to be taken in private, so that the defendant shall rarely have the opportunity of availing himself of his legal rights. If the law recognised it as a right of the defendant to avail himself of the objection, that the indictment was found by the grand jury upon evidence not strictly legal or competent, it would be consistent neither with law nor justice to deprive any defendant of the opportunity of making the objection. The constitution provides that no person shall be held to answer for a criminal offence, unless on the presentment or indictment of a grand jury; but it neither provides the mode of presentment, nor the evidence upon which it shall rest. Nor can it with propriety be said to be a right of the defendant to be informed of the evidence upon which the grand jury acted, or to avail himself of its legal incompetency. The case of *Rex* v. *Dickinson* (*Russell & Ryan* 401), so far as it regards the right of the defendant to avail himself of the objection, must rest, it is presumed, upon the authority of the English statute, and not upon any rule of the common law. It is in reality, however, merely an exercise of discretion on the part of the court, which the court may certainly exercise in the disposition of an indictment in all cases where the grand jury have been guilty of any misconduct, or where, from any cause, public justice will be better promoted by a discharge of the defendant than by an acquittal. The case of *The United States* v. *Coolidge*, 2 *Gall*. 364, is apparently an authority in point in support of the motion; but with the highest respect for the tribunal by whom it was decided, we cannot recognise its authority. The case is in more respects than one anomalous, viewed in regard to our law and mode of practice. The cause had been partly tried, and was postponed in

consequence of a witness on the part of the state, who had also been before the grand jury, declaring that he was conscientiously scrupulous of taking an oath, as required by law, in consequence of which the prosecution failed, and the witness was committed for a contempt. The counsel of the defendant thereupon moved that the indictment be quashed, on the ground that the witness had not been sworn before the grand jury. The affidavit of the witness was taken to prove the fact that he was not sworn. Counter affidavits were produced on the part of the prosecution, but the court, taking the fact to be true that the witness was not sworn, quashed the indictment. It is worthy of notice that the motion to quash, so far as appears by the law, was entertained without obtaining leave to withdraw the defendant's plea of not guilty, and that, for all that appeared to the court, there might have been other and competent evidence before the grand jury of the facts testified to by the witness. The case then amounts to this, that if a witness be examined before the grand jury without being sworn the indictment would be quashed, though the charges be fully sustained by other testimony before the grand jury. It is not denied that the court may, in the exercise of a sound discretion, in order to promote the purity of the administration of justice and for the greater security of the rights of the citizen, quash an indictment by reason of the misconduct of the grand jury. But if it be meant to assert that that is a right on the part of the defendant, of which he may avail himself by plea, we apprehend the proposition is totally indefensible. It is founded in a misapprehension of the office of the grand jury, who are not to try or convict the defendant, but merely to authorize the accusation upon which he may be put upon trial. To permit every defendant to question the competency and qualification of every witness before the grand jury would lead to the obstruction of the administration, if not the defeat of the ends of justice; and to make the right at all valuable, the doors of the grand jury room must be thrown open, and the defendant permitted to scrutinize not only the evidence upon which he is to be tried, but also the evidence upon which he was indicted. The right has never been recognised in New

Jersey, and it is obvious that serious evils, without corresponding benefit, must result from its recognition.

III. It is further objected that the affidavit upon which perjury is assigned does not appear by the indictment to be material. The materiality of the oath taken must appear with *convenient certainty.* It may be shown either by direct averment or may appear from the matter shown upon the record. *Cro. Car.* 352; *Cro. Eliz.* 148; 1 *Term R.* 69; 5 *Term R.* 318; *Rex* v. *Nicholls,* 1 *Barn. & Ad.* 21; *Commonwealth* v. *Knight,* 12 *Mass.* 274.

In the present case it appears with convenient certainty, both by direct averment and from the facts set forth in the indictment, that the affidavit was material. It is expressly averred that the affidavit was material to resume banking operations under the act. The affidavit, moreover, is made material by the very terms of the act set forth in the indictment. It was not necessary to aver expressly that the bank had suspended, or that it wished to resume, or that it authorized the affidavit to be made and filed. These matters, so far as they are at all material, appear with sufficient certainty from the face of the indictment. It was certainly material that the affidavit should be made and filed in order to enable the bank to resume its operations, and if the cashier made the affidavit without the order or direction of the directors, it is not the less material, nor is he the less guilty.

IV. It is further objected that the oath is not in compliance with the requirements of the statute, and is therefore extra-judicial.

The statute requires that, to enable the bank to resume operations, the *president and cashier* shall make and file their affidavit that the bank "has *bona fide* a cash capital for banking purposes amounting to at least forty thousand dollars." The affidavit of the president and cashier is, and of necessity must be, essentially several. Whether it be contained in one paper or in two is quite immaterial. The parties are sworn and testify severally, though there be but one written affidavit. Nor does it at all affect the materiality of the oath of the cashier, or his culpability, if from any cause the president

failed to take the oath. The oath was material when taken, and if from any cause it was rendered unavailing, its materiality was not thereby affected. Two witnesses, or at least one, corroborated by circumstances, is essential to sustain an indictment for perjury. If one witness should testify to the fact of perjury, and the testimony should prove unavailing for want of a second witness, the first would not thereby be rendered immaterial, nor the witness relieved from the crime of perjury because all the evidence which the law required had not been produced.

Nor is the objection well founded, that the language of the affidavit is not sanctioned by the law. The legislature did not design to prescribe the precise form of an oath, the slightest deviation from the phraseology of which should prove fatal. The affidavit filed appears to us identical *in meaning* with that prescribed by the statute. An averment, that a bank has *bona fide* a cash capital, or a *bona fide* cash capital, or a cash capital *bona fide*, seems to us to vary rather in sound than in sense. We must presume that the defendant so understood it, and that the affidavit was filed in good faith to comply with the law, and not with a design to escape the penalty of perjury by a mere verbal transposition.

V. It is objected that the indictment is defective in the averment of the authority of the officer to take the affidavit. The indictment in this respect conforms to the precedents found in the books, except that it omits the phrase " then and there." The precedents usually though not universally, in averring the authority of the officer, aver it with circumstance of time and place. Exceptions to the practice are to be found. *Stubb's Cr. Cir.* 520.

The general rule is, that in indictments for offences of commission, every act which is a necessary ingredient in the offence must be laid with time and place. In cases of felony, *in favorem vitæ*, the rule is strictly enforced; but in indictments for misdemeanors, if time and place be added to the first act, it will be construed to refer equally to all the ensuing acts, although in practice it is usual to repeat the averment. 2 *Hale's P. C.* 178 ; *Cro. Jac.* 41 ; *Arch. Cr. Pl.* 11.

State v. Dayton.

In the present case it is not denied that time and place are added to every material act done to constitute the offence. The indictment charges that the defendant, on the 20th of August, 1849, at the township of Morris, appeared before C. E. S., then and still being one of the masters in chancery, and then and there, before the said C. E. S., master in chancery as aforesaid, in due form of law was sworn, and did then and there take and subscribe his solemn oath in writing before the said C. E. S., master as aforesaid, (the said C. E. S. having competent power and authority, as such master in chancery, to administer the oath to the said H. D. in that behalf). The addition of time and place extends as well to the authority of the officer as to the fact of taking the oath. The plain and obvious reading of the sentence is, that the master had the authority at the time and place of administering the oath. The indictment, therefore, is sufficiently certain.

VI. It is further objected that the indictment should have concluded against the form of the statutes, and not against the form of the statute. Whatever may have been the technical refinements in the ancient cases upon this point, the modern authorities do not countenance the objection. The decisions in New Jersey are against it. *The State* v. *Townley,* 3 *Harr.* 311; *Cruser* v. *The State,* 3 *Harr.* 206; *The State* v. *Berry,* 4 *Halst.* 374.

The objections, that the name of one of the jurors contained in the caption did not correspond with the name in the panel, and that the indictment is averred to have been presented upon the oaths, and not upon the oath, of the grand jurors, have been considered and overruled in the case of *The State* v. *Norton and others,* decided at the present term.

The motion to quash must be overruled.

Justices RANDOLPH and OGDEN concurred.

The like order will be made in the case of *The State* v. *Lambert Norton* for perjury, which involves the same points, and was submitted by counsel upon the same argument.

CITED *in State* v. *Stimson,* 4 *Zab.* 485 ; *State* v. *Beard,* 1 *Dutch.* 385.