109 N.J. Super. 243 (1970)
262 A.2d 917
STATE OF NEW JERSEY, PLAINTIFF,
v.
ALBERT W. COSTA AND PHILIP E. SOLIMENE, DEFENDANTS.
Superior Court of New Jersey, Law Division  Criminal.
Decided March 5, 1970.
*244 Mr. William L. Kattak, Assistant Prosecutor, attorney for plaintiff.
Mr. Melvin Fine, attorney for defendant Costa.
Mr. Robert B. Cherry, attorney for defendant Solimene.
CRANE, A.J.S.C.
Defendants have been indicted for breaking and entering the dwelling house of one Paul Whitehead and stealing therefrom $34,751.75 in assorted coins, four pieces of luggage and two pieces of jewelry. Defense counsel have moved to dismiss the indictment upon the ground that it was returned without adequate evidence having been presented to the grand jury.
The transcript of the testimony before the grand jury was made available to defense counsel as the result of pretrial discovery proceedings. (Cf. State v. Graziani, 60 N.J. Super. 1 (App. Div. 1959), where such testimony was not available in accordance with the rules then prevailing.) It reveals that only one witness testified before that body, namely Lieutenant Vincent J. Mangiafico of the Hawthorne Police Department. A brief extract from his testimony will demonstrate its nature.
Q. Lt. Mangiafico, you're a member of the Hawthorne Police Department?
A. Yes, sir, I am.
O. And did you participate in the investigation there leading to these charges against Albert W. Costa and Philip E. Solimene?
A. Yes, sir.
Q. Will you give us the benefit of the police investigation in this matter?
A. Yes. The day of the offense was on a Friday, February 28, 1969 at approximately 3:58 P.M. The offense took place at Mr. and Mrs. Paul Whitehead of 18 Wagner Place of Hawthorne, New Jersey. Upon arriving at the scene there I spoke to the victim, Mr. Whitehead, and made an observation of the entire premises. Three or four rooms had been ransacked. And from the preliminary investigation, Mr. Whitehead stated that his entire coin collection had been taken. Also, he also took inventory that there were several pieces of luggage missing and several pieces of jewelry. His inventory was *245 not complete for several days. However, he did present an inventory which amounted to the market value of these rare coins which were gold, silver and other coins were $34,751.75. The face value of the coins were $1,976.24.
As we proceeded with the investigation at that time, we started to canvass the neighborhood and we spoke to one witness, a Betty Mitchell of 5 Midland Avenue and she stated to us that she did observe a white male, dark hair, wearing black gloves standing at the rear door of the Whitehead residence at approximately 1 P.M. that day. She couldn't give us any other description. However, we did check around the block from Mr. Whitehead. We spoke to a Jane  Joan Iseman of 22 Wagner Place. She stated she was on her way home from school and she did pass the Whitehead house at approximately 2:45. There she saw standing at the rear door what she described as a white male, approximately 25 to 30 years old, 5' 9", stock-built and she described him as having a thick neck or like an athlete or a fullback. He had red hair. He had a three length quarter coat [sic] and he had black gloves. She stated that she could identify the subject if she saw him again. This was all on the initial date.
On March 14, Miss Marlene Brockheiser of 334 Diamond Bridge Avenue came forth on her own. She came to Headquarters. She thought it was important that she give testimony to what she saw on that particular day. She stated she was in her backyard attending to her child when she observed a white male about 30 years old, 5'8", about a hundred sixty-five pounds, black hair, wearing a sport jacket. She stated the subject was carrying two green suitcases, which were described as the type suitcases taken from the Whitehead's house. In her own terminology she said appeared to be very heavy and she felt sorry for the man, because his face was burned. However, she stated she can identify the subject. At 5:30 that same day on Tuesday I contacted Patrolman Jack Lombardi of the Pompton Lake Police Department. He agreed to come down and make a composite of each one of the suspects. Sketches were made as a result of descriptions given by Joan Iseman as the party she saw at the rear door of the Whitehead house and Marlene Brockheiser gave a description of the person she saw walking up the street from the Whitehead house carrying green suitcases.
On Wednesday, the following day, March 5, a Margaret Fanning came forth. Her house is directly on the corner of Diamond Bridge Avenue and Wagner Place. She stated that she saw a person on 3 occasions that particular day of the crime and she describes the person as being a white male, about 20 to 25 years old, 5'9", curly brownish red hair. He was wearing a three length  3 quarter length coat. She saw him on three different occasions and she also saw this person carrying a green suitcase and she also stated that she could positively identify this person in the event that he was saw again.
On March 18, on Tuesday, I received information, the result of a phone call submitting the names of Albert Costa and Phillip E. Solimene as the persons responsible for committing the crimes in *246 the Borough of Hawthorne. Acting on this information, I immediately made a routine check on both of these suspects. I check their records 
The lieutenant, whose excellent police work is to be commended, then went on to describe the process of the identification of the defendant from photographs shown witnesses. Other than the description of the observations he made, from which he concluded that three of the four rooms had been ransacked, the officer was simply relating what had been told him by other persons.
The use of hearsay testimony before a grand jury does not in and of itself invalidate an indictment. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Nor is it necessary that all of the evidence before a grand jury be legally competent. State v. Dayton, 23 N.J.L. 49 (Sup. Ct. 1850). But it has been recently held that where the sole witness before the grand jury was a detective who did nothing but present the prosecutor's file, the indictment was subject to dismissal. State v. Chandler, 98 N.J. Super. 241 (Cty. Ct. 1967). In the present case there was not even an attempt to introduce sworn statements of witnesses before the grand jury upon which an indictment might properly have been based. See State v. Laws, 50 N.J. 159, 182 (1967).
An important function of a grand jury, and one of the principal reasons for the existence of the grand jury system, is the protection of innocent persons against having unfounded accusations brought against them. Such an important function cannot be performed in a perfunctory manner. If a grand jury is merely to stamp approval upon the findings of an investigative police officer, why have grand jury proceedings at all? This grand jury was specifically instructed, as are all grand juries in Passaic County, that
Your principal function as members of the Grand Jury will be to hear evidence presented by the Prosecutor concerning allegations of violations of the criminal law. The Prosecutor will present witnesses *247 he has interviewed or persons who have made complaints that a crime has been committed. You will be required to determine, after hearing legal evidence, not merely hearsay or rumor, whether any offense has been committed. If you find that an offense has been committed, you are to determine who shall be accused of the offense and return indictments in proper cases. Ordinarily you would only hear the state's side of the case and after you have heard the evidence, you are to decide whether a prima facie case has been made out. This means that you are to determine whether or not the State has presented evidence which, by itself if unexplained or uncontradicted indicates first that a crime has been committed, that the defendant committed it, and thus a conviction of the accused would be justified. If you so find, you must vote on the matter in accordance with your oath and return an indictment. There is another very important part of your duty and that is that you have an obligation to protect innocent persons from unfounded criminal accusations brought againt them. If the evidence that you hear does not convince you that a crime was committed or that if a crime was committed that it was not committed by the person or persons accused, then it will be your duty not to return an indictment. In such a case you will vote "no bill." [Emphasis added]
The testimony presented to the grand jury in this case had the characteristic of smoothness described in United States v. Arcuri, 282 F. Supp. 347 (D.E.D.N.Y. 1968). A grand jury presented wtih such "evidence" is unable to perform its proper function. It is unable to determine whether a crime has in fact been committed and whether there is sufficient evidence to justify a charge against the accused without relying completely upon the testimony of the investigative officer.
Some cases have referred to the returning of an indictment under circumstances such as are here present as "misconduct" of the grand jury. See e.g., State v. Dayton, supra; State v. Donovan, 129 N.J.L. 478, 483 (Sup. Ct. 1943); State v. Chandler, supra. The real dereliction, however, is on the part of the prosecutor. Grand jurors are lay people; while they are for the most part highly intelligent and perform their functions exceedingly well, they are not expected to have a professional understanding of the propriety of proceedings before them. The prosecutor is a professional, however, and he is expected to present evidence to a grand *248 jury in a manner which conforms to the appropriate legal precedents. That the proceedings have reached this stage is regrettable. No one doubts that the prosecutor has adhered to high ethical standards but it appears that it would have been a relatively simple matter for him to obtain a superseding indictment.
Motions of this nature are directed to the sound discretion of the court. State v. Dayton, supra. Among the factors to be considered are the complexity of the case, United States v. Costello, supra, and the availability of witnesses with first-hand knowledge, United States v. Umans, 368 F.2d 725 (2 Cir.1966). Here no difficulty in producing witnesses appears; they are all local people and the case itself is relatively simple. No sound reason has been advanced by the State to justify its virtually exclusive reliance on hearsay. In view of all the factors the indictment will be dismissed.