223 N.J. Super. 578 (1988)
539 A.2d 325
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JAMES D. HOLSTEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 8, 1988.
Decided March 18, 1988.
*579 Before Judges J.H. COLEMAN, O'BRIEN and STERN.
John H. Stamler, Union County Prosecutor, attorney for appellant (Steven J. Kaflowitz, Assistant Prosecutor, of counsel).
Peter F. Skorney, attorney for respondent (Peter F. Skorney on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Pursuant to leave granted, the prosecutor of Union County appeals from an order of the Assignment Judge dismissing an indictment charging defendant with possession of a firearm without a permit, N.J.S.A. 2C:39-5b; possession of a firearm with purpose to use it unlawfully against the person or property of another, N.J.S.A. 2C:39-4a; purposely or knowingly causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1b(2), and recklessly causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1b(3). We are constrained to reverse.
In order to understand the issues before us, a complete recital of the grand jury testimony is required. After the prosecutor introduced the case and indicated the charges for consideration, the victim testified. His entire testimony is as follows:
Q. Good morning, Mr. Dutton. If you would state for the record your full name and spell your last name.
A. Eric Dutton, D-u-t-t-o-n.

*580 Q. Where do you live, Mr. Dutton?
A. 840 O Donald Road in Scotch Plains.
Q. Directing your attention to the afternoon of June 22, 1987 while you were walking on North Avenue in Fanwood, were you hit by a BB that was shot at you from a passing car?
A. Yes, sir.
Q. Did you run after the car and catch up to it after you were hit?
A. Yes, sir.
Q. Did you see the driver of the car with a handgun in his hand?
A. Yes, sir.
Q. And did the driver put the gun down as you approached?
A. Yes, he did.
Q. Did you ask the driver why he shot at you?
A. Yes, I did.
Q. He said he didn't do it and that if he had, he would have known it?
A. Yes, sir.
Q. Now, did you tell him that you were going to call the police?
A. Yes, I did.
Q. Did he take off?
A. Yes, he did.
Q. Now, after the police were called, did you later see this same individual with the police?
A. Yes, sir.
Q. Now, the BB I gather hit you somewhere in the arm?
A. Yes, sir.
Q. And it caused a welt on your arm and pain?
A. Yes, sir.
Q. But it didn't break the skin, didn't require any treatment?
A. There was no puncture, no.
Q. Thank you. I have no further questions.
[PROSECUTOR]: Any questions from the Grand Jury?
(There is no response).
[PROSECUTOR]: Being none, you may step down. Thank you for coming.
(The witness is excused).
Thereafter the arresting officer testified before the grand jury.
His entire testimony was as follows:
Q. Good morning, Officer.
A. Good morning.
Q. If you would state for the record, please, your full name and spell your last name.
A. Thomas Jedic, J-e-d-i-c.
Q. By whom are you employed?
A. Fanwood Police Department.

*581 Q. In what capacity?
A. Patrol officer.
Q. Directing your attention to the afternoon of June 22, 1987, did you investigate a report by an Eric Dutton that he had been shot with a BB fired by a BB handgun?
A. Yes, sir.
Q. This was as he was walking on North Avenue in Fanwood?
A. That's correct.
Q. Is such a gun, a BB gun a firearm designed to be fired by the use of one hand that ejects a solid projectile less than 3/8 of an inch by spring force with sufficient force to injure a person?
A. That's correct.
Q. Was a description of the vehicle given?
A. Yes, sir, it was.
Q. At a later time did you stop a vehicle operated by a James Holsten in Fanwood?
A. Yes, I did.
Q. Following the stopping of this car, did James Holsten [admit] to having shot the man with a BB gun which he said thereafter threw it in Watchung Reservation?
A. Yes, sir, he did.
Q. I gather the gun was not recovered?
A. No, sir, it was not.
Q. Did this James B. Holsten have the requisite permit in the state of New Jersey to carry a handgun?
A. No.
Q. Thank you. I have no further questions.
[PROSECUTOR]: Any questions from the Grand Jury?
(There is no response).
[PROSECUTOR]: Being none, you may step down. Thank you for coming.
(The witness is excused).
Defendant moved to dismiss the indictment principally on the ground that the evidence relating to the charge under N.J.S.A. 2C:39-4a did not sufficiently indicate a purpose to use the firearm unlawfully, as required by the then recent opinion of the Supreme Court in State v. Harmon, 104 N.J. 189 (1986). Defendant acknowledged that "the evidence would indicate that my client shot from the car what is alleged to be a BB at the victim, who was walking along the street, the pedestrian, and he was evidently hit in the arm." However, while the motion and briefs presented to the Assignment Judge were not *582 presented to us although referred to in the transcript at the time of argument, it is clear that defendant was contending that the evidence did not show "the existence of an unlawful purpose," as required to sustain a conviction under N.J.S.A. 2C:39-4. See State v. Harmon, supra, 104 N.J. at 199.
In Harmon, the court distinguished between an offense involving possession for unlawful purpose, N.J.S.A. 2C:39-4, and regulatory offenses embodied in N.J.S.A. 2C:39-3 and N.J.S.A. 2C:39-5. With respect to the former, the court concluded:
To summarize, we hold that in order to sustain a conviction under N.J.S.A. 2C:39-4(a), the State must prove beyond a reasonable doubt the following four facts: (1) the item possessed was a `firearm' within the meaning of N.J.S.A. 2C:39-1(f); (2) the defendant `possessed' it, which under N.J.S.A. 2C:2-1(c) requires knowledge or awareness of his control over the item; (3) the defendant's purpose or conscious objective was to use it against the person or property of another; and (4) the defendant intended to use it in a manner that was proscribed by law. [State v. Harmon, supra, 104 N.J. at 212 (citation omitted)].
After review of the grand jury transcript and consideration of the arguments, the Assignment Judge dismissed the indictment in its entirety stating:
Well, gentlemen, I'm going to send it back to the Grand Jury. I am going to do it for this reason: I'm going to duck the issue under Harmon. It's very troublesome, but it [h]as to be developed much better than this one. I am going to send it back to the Grand Jury essentially because I'm not satisfied that its sufficient information provided to the Grand Jury on that element dealing with the handgun.
The Grand Jury, given the flagrant use of leading questions by the Assistant Prosecutor, never had the opportunity to inquire as to what did Mr. Dutton base his response on. You can't even say his testimony. All the information is in the question and just his affirmative response.
* * * * * * * *
I will simply ask the State, take your evidence to the Grand Jury again, present it fully and fairly under proper definition and see if the Grand Jury is satisfied to return the same indictment.
Don't do it in the form of a series of leading questions that give absolutely no opportunity for the Grand Jury to evaluate the witness's ability to comprehend and to observe, to recite that which he observed. Do it fairly, given the consequences that will otherwise flow from such a serious charge.
* * * * * * * *

*583 I could excise and allow the others to go forward but the weapon is so intertwined in all of these charges that I think there should be complete dismissal and a complete representation to the Grand Jury.[1]
At least since 1850, indictments have been immune from attack on the basis of the quantity or quality of evidence presented to the grand jury, see State v. Dayton, 23 N.J.L. 49, 56-57 (Sup.Ct. 1850), although our former Supreme Court in 1943 made clear that an indictment could not survive if it was returned "without having some evidence to support [the] charges." State v. Donovan, 129 N.J.L. 478, 483 (Sup.Ct. 1943). It was not until 1967, however, that an indictment was actually dismissed based on the lack of adequate proofs before the grand jury. See State v. Chandler, 98 N.J. Super. 241 (Cty.Ct. 1967) (where the only witness was an investigator who did nothing more than deliver the investigative file to the grand jury). There, the Law Division stated:
The facts before us are unique. Our concern is not with the role of hearsay evidence in the grand jury hearing, but with the established fact that the sole witness who testified before the grand jury was unable to provide any `relevant information.' A grand jury that has been presented only with a `witness' who is a stranger to the event and can tell the inquest nothing about it is no different from one that has heard no witness at all. The most we may surmise is that the detective served only the limited purpose of consigning the prosecutor's file to the grand jury and thereupon left the room. This is not, it seems to me, the procedure countenanced by State v. Dayton, supra, and should not be sanctioned here. [98 N.J. Super. at 251].
Approximately three years later, another indictment was dismissed in the Law Division. In State v. Costa, 109 N.J. Super. 243 (Law Div. 1970), only one witness testified before the grand jury, a police lieutenant, and he "was simply relating what had been told him by other persons." Id. at 246. The Law Division acknowledged that "[t]he use of hearsay testimony before a grand jury does not in and of itself invalidate an indictment[,] Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)," and that it is not "necessary that all *584 of the evidence before a grand jury be legally competent. State v. Dayton, 23 N.J.L. 49 (Sup.Ct. 1850)." Ibid. Nevertheless, the Law Division dismissed the indictment against Costa because "[i]n the present case there was not even an attempt to introduce sworn statements of witnesses before the grand jury upon which an indictment might properly have been based. See State v. Laws, 50 N.J. 159, 182 (1967)." Ibid. See also State v. Hill, 166 N.J. Super. 224, 228-229 (Law Div. 1978), rev'd on other grounds 170 N.J. Super. 485 (App.Div. 1979).
If the testimony against defendant in this case was based exclusively on hearsay, Costa might support the action of the Assignment Judge in dismissing the indictment. However, here there was evidence from two witnesses both of whom made relevant observations, and the issue before us is whether an indictment can be based exclusively on incompetent evidence or evidence in form inadmissible at trial.
The holdings of both Chandler and Costa have been questioned as a result of our conclusion in State v. Ferrante, 111 N.J. Super. 299 (App.Div. 1970), that "[a]bsent misconduct or abdication by grand jurors, the question whether evidence before a grand jury was competent or incompetent, we find to be irrelevant on a motion to dismiss the indictment." Id. at 306.
In 1977, after two years of extensive study, a special panel selected by the New Jersey State Bar Association and chaired by the late Justice John J. Francis returned a report recommending partial abolition of the grand jury process and substituting therefor a procedure which permitted processing of complaint cases by information and probable cause hearings. See "Report on the Grand Jury," 100 N.J.L.J. 369 (1977).[2] Because the report recommended continuation of the grand jury in investigative matters and the ability of the prosecutor to *585 present certain complaint cases to the grand jury on a discretionary basis, and because the report recognized that a constitutional amendment would be required and would take a reasonably lengthy time to perfect, the report also discussed at length procedures for improving the quantum and quality of grand jury presentations prior to and even after the proposed constitutional amendment was adopted. The report criticized the status of the law as it existed at the time and as detailed above. See 100 N.J.L.J. at 406-407.
Notwithstanding the criticism, no new legislation or court rules have been adopted in response to the recommendations embodied in the report concerning the quantum and quality of evidence.[3] To the contrary, while no action has been taken to affect the historic meaning of the right to indictment by grand jury in the State, see N.J. Const. (1947), Art I, par. 8, our case law has recognized that "[a]n indictment may be based largely or wholly on hearsay and other evidence which may not be legally competent or admissible at the plenary trial. See e.g., State v. Bennett, [194 N.J. Super. 231, 234 (App.Div. 1984), certif. den. 103 N.J. 463 (1986)]; State v. Thrunk, [157 N.J. Super. 265, 278 (App.Div. 1978)]; State v. Ferrante, 111 N.J. Super. 299, 304-306 (App.Div. 1970). [citation omitted]." State v. Schmidt, 213 N.J. Super. 576, 584 (App.Div. 1986), certif. granted 107 N.J. 635 (1987). See also State v. Vasky, 218 N.J. Super. 487, 491 (App.Div. 1987).
Although the testimony was largely or exclusively incompetent by virtue of the leading questions, there was evidence before the grand jury in this case sufficient to sustain *586 the charges, including the allegation under N.J.S.A. 2C:39-4a. The fact that the victim was hit with a BB pellet gives rise to at least an inference of an unlawful purpose sufficient to return an indictment.
Although we have great sympathy with the determination of the trial judge and the reasons he expressed, we are satisfied that long-standing case law in this State requires reversal of the dismissal. The Supreme Court, either by the adjudicatory process or by adoption of rules governing practice and procedure, can, of course, reconsider issues regarding practice before the grand jury.
Accordingly, the judgment under review is reversed and the matter is remanded to the Law Division for trial.
NOTES
[1] The Assignment Judge also referred to the fact that defendant was charged with Graves Act offenses and that State v. Harmon considered that significant in construing the meaning of N.J.S.A. 2C:39-4a.
[2] See the similar companion report of the Criminal Practice Committee, "The Grand Jury: A Blueprint for Reform," 100 N.J.L.J. 443 (1977).
[3] There have been certain rule changes and statutory amendments related to other issues addressed in the report and developing case law. See, e.g., R. 3:6-5, R. 3:6-6; State v. Hart, 139 N.J. Super. 565 (App.Div. 1976). Although the issue need not be decided by us, we have no doubt that either the Legislature or the Supreme Court could initiate or take action directed to the quality of evidence to be required before the grand jury. See, e.g., State v. D.R., 109 N.J. 348 (1988); State v. DiPaolo, 34 N.J. 279, 285 (1961), ("[i]ndictmentis patently a matter of practice and procedure"); State v. Greco, 29 N.J. 94, 104 (1959).