111 N.J. Super. 299 (1970)
268 A.2d 301
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANTHONY FERRANTE, ALFRED SALERNO, THOMAS BONFONTI, RAYMOND MASSARO, KENNETH LUCIANIN, RICHARD REAN, AND SALVATORE LOCASCIO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1970.
Decided August 7, 1970.
*301 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. John P. Goceljak, Assistant Prosecutor, argued the cause for appellant (Mr. Joseph D.J. Gourley, Passaic County Prosecutor, attorney).
Mr. Charles C. Carella argued the cause for respondents Ferrante, Salerno and Massaro (Messrs. Citrino, Carella & Balsam, attorneys; Mr. William S. Bonanno on the brief).
Mr. Benedict E. Lucchi filed a brief for respondent Massaro (Messrs. Lucchi & Conway, attorneys).
Mr. William E. Sellinger argued the cause for respondents Lucianin, Rean and Locascio (Messrs. Sellinger & Chester, attorneys).
Mr. Louis Santorf filed a brief for respondent Lucianin.
The opinion of the court was delivered by MATTHEWS, J.A.D.
The State appeals from the dismissal of an indictment charging the seven defendants with conspiracy to obstruct justice (N.J.S.A. 2A:98-1 and 2A:98-2).
In May 1967 Detective Decker of the State Police was assigned to the Passaic County Prosecutor's office to handle gambling investigations. Several months thereafter he was approached by defendant Massaro, also a policeman, who allegedly solicited his complicity in an arrangement with gambling interests. Decker immediately reported the proposal to his superiors and was instructed to play along. Massaro then introduced Decker to defendant Salerno, who explained that the detective would receive certain sums of money for keeping the gamblers informed as to planned raids to be made by the police, and for suppressing other information turned up in his investigations. The grand jury testimony reveals a long series of conferences and communications *302 among Decker and defendants Salerno, Ferrante and Massaro over the course of the succeeding months.
Massaro, Ferrante and Salerno were indicted by a Bergen County grand jury for bribery and conspiracy to bribe. They pleaded guilty to the conspiracy charges and were sentenced to prison. Subsequently, the Passaic County grand jury indicted the same defendants, along with three members of the Passaic Police Department's anti-gambling squad, on charges of conspiracy to obstruct justice and the due administration of the laws. N.J.S.A. 2A:98-1; N.J.S.A. 2A:98-2. Defendants Massaro and Ferrante (but not Salerno) moved to have the indictments dismissed on the grounds that they constituted double jeopardy. The trial judge found that both the Bergen and Passaic indictments arose from the same conspiracy and therefore granted defendants' motions.
Shortly thereafter defendants Lucianin, Rean and Locascio moved to have the indictment dismissed as to them on the ground that there had been no legel or competent evidence submitted to the Passaic County grand jury on which to base it. The judge concluded that, having read the record, he was "unable to find sufficient testimony produced before the grand jury which would substantiate and justify the return of an indictment against defendants Rean, Locascio, and Lucianin, charging each or any of them with conspiracy." Accordingly, he granted the motions for dismissal.

I. Dismissal of Indictments  Double Jeopardy
The State first urges that the prior conviction of three of the defendants for conspiracy to commit bribery should not preclude later indictments for conspiracy to obstruct justice and the due administration of the laws. The Passaic County indictment essentially charges defendants with a broad conspiracy to withhold official information and secretly to transmit such information to the criminal element, including *303 but not limited to the bribery of Detective Decker. The State argues that the indictments charged separate and distinct offenses, thereby avoiding the defense of double jeopardy. Defendants counter by urging that both of the alleged conspiracies arose out of the same transaction and would be proved by the same evidence; alternatively, they contend that, in any event, one continuous conspiracy cannot be split up into separate conspiracies for the purpose of multiple prosecutions.
In State v. Currie, 41 N.J. 531 (1964), the court rejected strict adherence to either the "same evidence" test or the "same transaction" test, opting instead for a broader analysis of the multiple prosecutions in view of the policies underlying the double jeopardy proscription. Here the second indictment, if proved, covers a conspiracy of greater dimensions than the bribery of Detective Decker. In fact, while the sole witness would be the same, the State's case might well revolve around the alleged bribery of other police officers and therefore be distinct from the Bergen County prosecution. However, to the extent that the Passaic County prosecution is based on the bribery of Decker, the case involves a second trial on the same offense, no matter how variously it might be labeled.
Nonetheless, it is well established that the State may not carve up a single conspiracy into smaller conspiracies for the purpose of multiple prosecutions. See Scarlett v. State, 201 Md. 210, 93 A.2d 753 (Ct. App. 1953); United States v. Cohen, 197 F.2d 26 (3 Cir.1952); United States v. Palermo, 410 F.2d 468 (7 Cir.1964). If, in fact, the alleged conspiracy is but one overall collusive arrangement, it must be treated as such by the prosecution.
Here, the Passaic County indictment alleges virtually the same overt acts of illegality as did the Bergen County indictments, with the addition of the allegations as to the other police officers, based, however, on rather flimsy shreds of circumstantial inference. Essentially, both cases involved the attempted bribery of the police officer as part of a single *304 plot to circumvent the workings of the law. While there might be a technical distinction between the two indictments, it is apparent that they are in essence identical, although the later one is coupled with the tenuous charge as to the other policemen. While bribery of the other officers would be a separate offense if proved  and that is highly unlikely on the evidence thus far produced  both indictments center in substance on the bribery of Decker. Accordingly, we find that the standards of double jeopardy to have been violated and the trial judge correctly dismissed the indictment as to Massaro and Ferrante.

II. Dismissal of Indictments  Sufficient Legal and Competent Evidence
The three indicted Passaic police officers moved to have the indictments dismissed as against them on the grounds that the grand jury had lacked sufficient legal and competent evidence on which to support the charges. The trial judge agreed and granted the motions. The State argues that, given the necessarily circumstantial nature of proof in most conspiracy cases, the testimony adduced below was sufficient to support the indictments, citing State v. Graziani, 60 N.J. Super. 1, 13 (App. Div. 1959), affirmed o.b. 31 N.J. 538 (1960), cert. den. 363 U.S. 830, 80 S.Ct. 1001, 4 L.Ed.2d 1524 (1960).
Ordinarily, a court should not exercise its power to dismiss an indictment except on the clearest and plainest grounds, but where evidence is clearly lacking it is the duty of the court to set aside the charges. State v. Weleck, 10 N.J. 355, 364 (1952); State v. Donovan, 129 N.J.L. 478, 483 (Sup. Ct. 1943).
We have read the transcript of testimony before the grand jury which consists solely of the testimony of detective Decker. The greatest portion of that testimony is indubitably hearsay, and the State may well face problems of proof should the indictment be brought to trial. This, however, we deem to be irrelevant when we consider the *305 power of courts to review an indictment returned by a grand jury. Our present Constitution provides in Art. I, § 8, that "no person shall be held to answer to a criminal offense, unless on the presentment or indictment of a grand jury * * *." It is silent as to the method of presentment and the evidence upon which an indictment must rest. This same observation was made in State v. Dayton, 23 N.J.L. 49, 57 (Sup. Ct. 1850) with respect to the similar provision (Art. I, § 9) of our 1844 Constitution which was substantially identical to the present Art. I, § 8, above.
Dayton involved a motion to quash an indictment on the ground that it had not been based upon competent evidence. The claimed incompetence, as here, was hearsay. Chief Justice Green, in his opinion for the former Supreme Court, made the following observation:
* * * But conceding that the proposition is fully established, that there was not legal and competent evidence before the grand jury, does that afford the subject matter to sustain either a motion to quash or a plea in abatement? We are clearly of opinion, that in this state, at least, it does not. If the position be sound, that every indictment not found upon the production of legal and competent evidence before the grand jury is essentially vicious, it follows that in all cases where the witnesses produced before the grand jury are from any cause legally disqualified or incompetent to testify, or where any essential link in the chain of testimony is sustained by evidence not in itself legal, the indictment cannot be sustained, although there be ample competent testimony, not produced before the grand jury, to sustain the charges of the indictment. [23 N.J.L., at 56]
This rule has been recognized as controlling the review power of courts over indictments when a question of competency of evidence presented to a grand jury is made. State v. Ellenstein, 121 N.J.L. 304, 310 (Sup. Ct. 1938); State v. Donovan, 129 N.J.L. 478, 483 (Sup. Ct. 1943); State v. Garrison, 130 N.J.L. 350, 351 (Sup. Ct. 1943). Cf. State v. Laws, 50 N.J. 159 (1967). The same rule prevails in the federal jurisdiction. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). We note that more challenges to the validity of indictments on *306 evidentiary grounds have been made in recent months, principally because of the change in the rules permitting defendants access to grand jury testimony. See e.g., R. 3:13-3; R. 3:17-1. However, the adoption of rules giving access to grand jury testimony does not, in our judgment, change the substantive rule of law we have just noted. Absent misconduct or abdication by grand jurors, the question whether evidence before a grand jury was competent or incompetent, we find to be irrelevant on a motion to dismiss the indictment.
Nor do we find that the inclusion of the following language in the stock charge given by assignment judges to grand jurors:
Your function is principally to investigate allegations of violations of criminal law, and determine after hearing legal evidence  by that I mean not mere hearsay or rumor  whether any offense has been committed, and if so, who should be accused of the offense. (Emphasis added)
grants to courts any greater power over the deliberations of the grand jury, or imposes any greater obligations on grand jurors than existed theretofore. Jurors are obviously not judges of the competency or incompetency of evidence presented to them. In the case of petit jurors, the judge presiding over the case exercises that function for the jurors. In the case of grand jurors, there is no presiding officer, save the foreman  a layman. Most of the profession will agree, we are sure, that lawyers and judges have difficulties with the hearsay rule and its numerous exceptions. Considering this, we cannot conceive that the law should place on 23 laymen an obligation which those learned in the law can find taxing at times.
The indictment as to Kenneth Lucianin, Richard Rean and Salvatore Locascio should not have been dismissed.
The dismissal of the indictment as to Anthony Ferrante, Raymond Massaro and Alfred Salerno is affirmed. The dismissal as to Kenneth Lucianin, Richard Rean and Salvatore Locascio is reversed and remanded for trial.