192 N.J. Super. 141 (1983)
469 A.2d 46
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN ROBERT TIMMONS, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided September 6, 1983.
*143 Thomas J. Kapsak, Assistant Prosecutor, for plaintiff (Alan A. Rockoff, Middlesex County Prosecutor, attorney).
Edward J. Byrne, Assistant Deputy Public Defender, for defendant (Bradley Ferencz, Deputy Public Defender, attorney).
DEEGAN, J.S.C.
This is a two-part motion by defense counsel seeking to (1) preclude allegation of aggravating factors by the State under N.J.S.A. 2C:11-3(c)(4) beyond the date of this motion and (2) an order precluding the imposition of the death penalty by the sentencer. The motion was not opposed by the State. The State also conceded that it had not discovered any aggravating factors though its investigation was complete, and that, consequently, while not waiving the death penalty it would not be seeking the death penalty in this case.

*144 I
The novel issue raised here is whether, under our newly adopted death penalty law, N.J.S.A. 2C:11-3, and court rule pertaining to additional discovery in capital cases, R. 3:13-4, the court may grant such a motion.
In support of the motion, defendant argues that the State's failure to provide an itemization of aggravating factors at arraignment and, further, not seeking an extension of time to do so under R. 3:13-4, must preclude the State from setting forth such factors at this late date. The defendant contends that this failure should also preclude the State from ultimately seeking the death penalty in this case.
R. 3:13-4(a) requires the prosecutor to give defendant, at arraignment, an itemization of aggravating factors which he or she intends to prove at the sentencing hearing. Discovery pertaining to such aggravating factors must also be disclosed at arraignment, unless the time to do so is enlarged for good cause by the court. The purpose for this requirement is revealed in the commentary to the rule, which states, "This practice would serve to avoid needless delays often occasioned by the failure to provide discovery in a timely fashion. Such a practice has the added advantage of allowing increased time to fully investigate and analyze the aggravating and mitigating circumstances said to be present in a given case." Comments R. 3:13-4.
The additional time for investigation provided via the rule is vitally important to the defendant. This is so because, "... the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100 year prison term differs from one of only a year to two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). This distinction cannot be overstated.
*145 As defendant aptly points out, the possibility of the imposition of the death penalty impacts substantially upon various trial considerations and strategy. Because our statute is relatively new, and therefore our experience limited, a partial itemization of the trial considerations set into motion by the possibility that death may be imposed suggests the following:
1. The retention or appointment of counsel. If the defendant is able to retain counsel, the choice of counsel, the amount of money he is prepared to pay  the lengths to which he is prepared to go to get money  the interest his family and friends have in raising or donating money, are all influenced by the knowledge that his life, and not merely a prison term, is at stake. If the defendant is represented by the Public Defender then the designation of the case as capital or non-capital will determine the attorney to which it is assigned.
2. Tactical decisions about the handling of the case and pretrial motions. The defense will be handled differently where defendant's life is at stake. The plainest example is in the filing of pretrial motions. In a capital case recently tried in Essex County, defense counsel filed in excess of fifteen pretrial motions, including motions to exclude the news media, various discovery motions involving prior convictions, motions pertaining to the composition of the grand jury and petit jury venires, motions with respect to pretrial publicity and statements made to the press by the Prosecutor, a motion to prohibit the death qualification of prospective jurors, motions to dismiss the indictment because the death penalty is violative of the State and Federal Constitution, motions for attorney conducted voir dire and for a hearing on jury procedures, and a motion to limit the use of preemptory challenges by the State which deny a defendant's right to trial by jury. It is anticipated that most of these motions will be filed in every capital case in the foreseeable future. Many of the motions involve extensive briefing and argument and some involve evidentiary hearings.
3. Preparation for the penalty phase. A finding of guilt under N.J.S.A. 2C:11-3(c) requires a separate sentencing proceeding at which the evidence presented by the State will extend far beyond proof of the act. In order to rebut such claims and meet its own burden of going forward with mitigating evidence, the defense must conduct an extensive and unique investigation into the defendant's background, psychiatric and psychological make-up, prior criminal involvement and family history.
4. Eligibility for bail. All persons charged with crimes punishable by death may be denied bail under certain circumstances. R. 3:26-1. A defendant or his family may have expended a considerable sum of money in order to secure his release pending trial, only to discover that he is no longer eligible for bail, and in fact may be rearrested, once the offense is denominated as capital.

*146 5. Plea bargaining. It is anticipated that plea bargaining will continue under N.J.S.A. 2C:11-3. See Judge's Bench Manual for Capital Cases, pp. 7-8. Meaningful pretrial negotiations are precluded if the State can introduce the possibility of a death sentence at any time prior to trial.
Clearly, the longer defendant must wait to discover whether his will be a "death penalty case," the less time he will have to make considered judgments and preparations for the conduct of his trial.
Of crucial concern to the court is the possibility that delay in discovery of aggravating factors will irreparably prejudice the defendant in his efforts to prepare for the penalty phase of trial. Under our statutory scheme, it is defendant's burden at the penalty phase to produce evidence of mitigating factors. N.J.S.A. 2C:11-3(c)(2). Death is imposed by the court where the jury (or the court) finds that "any aggravating factor exists and is not outweighed by one or more mitigating factors. N.J.S.A. 2C:11-3(c)(3)(a). The existence of a mitigating factor, then, can mean the difference, literally, between life and death.
Defendant's latitude in presenting mitigating factors should be exceedingly broad, bounded only by the requirement of relevance. This is in accord with the holding of the Supreme Court in Lockett v. Ohio, 438 U.S. 586, 605-606, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978), "... the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death ... the need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in non-capital cases ... the non-availability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence ..."
*147 Although the Court in Lockett was considering the constitutionality of a statute which placed some limitation on the mitigating factors which could be presented by defendant Lockett has clear import to the issues before the court on this motion. Without doubt, a defendant is to be sentenced to death only on the clearest evidence that no mitigating factor or factors outweigh aggravating factors alleged by the State. However, when the State is permitted to delay its itemization of aggravating factors, and disclosure of discovery related to these factors, defendant runs the serious risk of having less than sufficient time to develop his case with regard to the existence of mitigating factors. If the State is permitted to delay, until the sentencing phase, the defendant may indeed be without time to rebut the State's allegations.
Our Supreme Court has seen fit to require by R. 3:13-4(a) that aggravating factors which the prosecutor intends to prove, along with discovery related thereto, shall be provided to the defendant at arraignment unless the time to do so has been enlarged by the court. This was done to permit defendant ample time to fully prepare for the penalty phase of his case. The language of the rule is unambiguous and the interpretation made by this court is supported by the Rule's comments, practical considerations regarding the conduct of trial, and defendant's constitutional rights under the Eighth and Fourteenth Amendments.
Considering next the authority of the court to preclude future allegations of aggravating factors, under the court rules relating generally to discovery in criminal cases, "... If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may ... prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate." R. 3:13-3(f). Our new court rule, R. 3:13-4, is not to be read apart from the rules in chief for discovery in criminal cases. *148 R. 3:13-4 is entitled, "Additional Discovery in Capital Cases." Section (a) of the rule provides, "In addition to any discovery provided pursuant to R. 3:13-3, the prosecuting attorney shall..." (Emphasis added) Thus, R. 3:13-4 is complementary to the general rules on criminal discovery and is not exempt from the R. 3:13-3 enforcement section, (f). Under R. 3:13-3(f), the court has discretion to enter an enforcement order which it deems appropriate. Guidance for the exercise of this discretion can be found in State v. Langanella, 144 N.J. Super. 268 (App. Div. 1976). In that case, the court was reviewing the dismissal of an indictment where the State had in fact disclosed evidence in discovery, but where the disclosure, by sheer mistake, did not extend to the outer limits of its knowledge. The court advised, "before a dismissal of an indictment is warranted in such circumstances, we believe there must be a finding of intention inconsistent with fair play and therefore inconsistent with due process, or an egregious carelessness or prosecutorial excess tantamount to suppression. In the absence of these conditions, the right of the public to its day in court in the prosecution of properly found indictments should be forfeited only if otherwise there would be manifest and harmful prejudice to defendant. 144 N.J. Super. at 282-283.
While the prosecutor's notice of aggravating factors is obviously not the same as an indictment, its function is the same, that is, to notify the defendant of the charges against him so that he may adequately meet those charges at trial; in the case of aggravating factors, at the sentencing proceeding. The notice of aggravating factors goes hand in hand with the indictment and is presented to the defendant at the time of arraignment.
Thus, while Langanella addressed the court's exercise of discretion in dismissing an indictment, because of the similarity between the indictment and the itemization of aggravating factors, it does provide guidance in the instant case. Here, to permit any further delay by the State would abbreviate defendant's *149 time to fully investigate those factors and to develop mitigating factors. In truth, the court may never know whether the fullness of time would have enabled defendant to better prepare for the penalty phase. However, the possibility that additional time may produce additional benefit convinces the court that to avoid prejudice to the defendant, the mandate of R. 3:13-4 must be enforced.
Accordingly, in light of the prosecutor's representation that no aggravating factors exist, and in the exercise of the sound discretion of the court, the State is precluded from alleging aggravating factors beyond this date.

II
Having barred the State from alleging aggravating factors henceforth, the court now addresses defendant's second request, that the sentencer be precluded from considering the death penalty as a sentencing option. Again, the State offered no opposition to this request. In support of this aspect of the motion, defendant relies, in part, on the theory that the prosecutor has inherent discretionary power to waive the death penalty. While not opposing the motion, the State argues unequivocally that the prosecutor has not the authority to waive the death penalty. In this court's view, the prosecutor's authority to waive the death penalty is not directly in issue here. The motion before the court is to preclude the sentencer from imposing the death sentence and it is upon this basis that a decision should be rendered.
Our death penalty statute contains a proscription on waiver of the sentencing proceeding by the prosecuting attorney, N.J.S.A. 2C:11-3(d), but contains no similar restriction upon action by the court. Also, R. 3:13-4 is silent as to whether the court may on motion bar imposition of the death penalty in cases in which an itemization of aggravating circumstances has not been furnished by the prosecutor. The rule then, albeit silent, is similarly no bar to action by the court. A considered view of the realities on *150 this case leads the court to conclude that the advisable course of action is to preclude the sentencer from considering the death penalty.
A capital case, unique in its sentence, requires unique procedural safeguards. The U.S. Supreme Court has imposed, for example, special jury selection procedures in capital cases. This has come to be known as "death qualification" of the jury. Death qualification is the process in a capital case of excluding those prospective jurors who make it unmistakably clear that they would automatically vote against the imposition of the death penalty or that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). A prospective juror must be individually questioned in voir dire, apart from other prospective jurors, as to his or her attitudes about the death penalty. Because numerous prospective jurors are likely to be eliminated by Witherspoon standards, the jury pool in a capital case is necessarily much larger than is required in a non-capital case. The court has already discussed the numerous pretrial motions which can be expected in capital cases.
These additional procedures may be considered as absolutely necessary in capital cases by an accused and would necessitate the expenditure of additional judicial resources and taxpayer dollars. Whether or not these procedures should be required then, would turn on whether the case is one where the death penalty may be imposed.
What makes a case a capital case, under our statute, is the existence of one or more aggravating factors which are not outweighed by one or more mitigating factors. N.J.S.A. 2C:11-3(c)(3)(a). The burden of establishing the existence of aggravating factors rests on the State, which must demonstrate the existence of such factors beyond a reasonable doubt. N.J.S.A. 2C:11-3(c)(2). Here, this opportunity has been taken from the State in the interest of preventing irreparable prejudice resulting *151 from the State's failure to advise defendant of aggravating factors upon which it would rely at the sentencing proceeding. The State has been barred from demonstrating that aggravating factors exist. Thus, the very essence of a capital case is absent here; there are no aggravating factors which the jury may consider. "If the jury or court finds that no aggravating factors exist, or that any aggravating factors which exist are outweighed by one or more mitigating factors, the court shall sentence the defendant pursuant to § b. N.J.S.A. 2C:11-3(c)(3)(b).[1]
Since no aggravating factors exist, this cannot be a capital case and thus, as our statute dictates, the court will sentence a convicted defendant pursuant to N.J.S.A. 2C:11-3(b). It follows that none of the special procedures necessary in capital cases will be required in this case since their justification relies solely upon the need for special safeguards where the ultimate penalty of death is a possibility.
It has been argued that the factfinder may find that aggravating factors exist, even where not alleged. To bar the State from alleging aggravating factors and from presenting evidence of them at the sentencing phase of trial, but yet to permit the factfinder to find their existence and impose the death sentence, leads to an incongruous result. In such a case, the defendant would be required to prepare for the sentencing phase of trial without notice of aggravating factors, forced to anticipate what aggravating factor or factors the jury may find at the sentencing hearing. Extending the argument one step further, by precluding the State from alleging aggravating factors yet permitting the factfinder to find them, the State is relieved of *152 its burden of proof at the sentencing hearing yet may nevertheless obtain a death sentence.
Certainly such an absurd result was not intended by our Legislature. This absurdity is avoided by precluding the sentencer from imposing the death penalty where no aggravating factors have been alleged by the State, either because the State has found that none exist or where their disclosure to the defendant has been barred by the court.
There is ample support for the court's authority to remove a question of fact from the jury's consideration where such fact is not at issue. In State v. Mack, 131 N.J. Super. 542, 546 (App.Div. 1974) the court stated:
We see no reason why a presentation should be cluttered  and misdirection encouraged  by limiting the right of the trial judge to remove from jury consideration factual issues about which there could be no real dispute and concerning which there has been an intentional and distinct concession. While the careful exercise of discretion by the trial judge is essential in any given case, where indicated that discretion can be exercised in the direction suggested without impairment to the viable rule that the State bears the burden of proof beyond a reasonable doubt as to all material elements of the crime. The simple rationale is that with respect to conceded facts that burden has been unimpeachably borne by the time the case is submitted to the jury. In such circumstances, as here, due process for the defendant and fair play for all remain untainted.
Here, the State has conceded the absence of aggravating factors and has further, been barred from introducing them in the future. To permit the issue of the death penalty to be considered by the jury would, at worst, encourage the incongruous result which the court has earlier discussed and, at best, require a vacuous proceeding at great cost in judicial time, administrative resources and taxpayer dollars.
In accordance with the foregoing, the court holds that (1) the State is precluded from alleging aggravating factors from this day forward and (2) the factfinder will be precluded from imposing the death penalty. This negates the necessity for special procedures where the death penalty may be imposed. Thus, if required, sentencing will proceed in accordance with the dictates of N.J.S.A. 2C:11-3(b).
NOTES
[1] N.J.S.A. 2C:11-3(b) "... a person convicted of murder may be sentenced, except as provided in subsection c. of this section, by the court to a term of 30 years, during which the person shall not be eligible for parole or to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole."