STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. VICTOR MCCRARY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued February 22, 1984—Decided June 26, 1984.

134

*Hilary L. Brunell,* Assistant Prosecutor, argued the cause for appellant and cross-respondent (*George L. Schneider,* Essex County Prosecutor, attorney; *John S. Redden,* Assistant Prosecutor, on the briefs).

*Paul M. Klein,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Joseph H. Rodriguez,* Public Defender, attorney; *Paul M. Klein, Ollis Douglas, Jr.,* and *B. Vincent Carlesimo,* Assistant Deputies Public Defender, on the briefs).

*Debra L. Stone,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Debra L. Stone* and *Catherine A. Foddai,* Deputy Attorney General, of counsel and on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

Under the New Jersey Code of Criminal Justice (Code), a defendant convicted of purposeful or knowing murder will be sentenced to death if one or more statutorily-specified aggravating factors exist and are not outweighed by one or more mitigating factors. *N.J.S.A.* 2C:11–3a, c. The Code requires the prosecuting attorney to give defendant notice of any aggravating factor that he intends to prove, either "[p]rior to the commencement of the sentencing proceeding, or at such time as he has knowledge of the existence of an aggravating factor * * *." *N.J.S.A.* 2C:11–3c(2). The issue is whether the Code and our Rules permit judicial review, prior to trial, of the

factual basis for aggravating factors, and, if so, by what kind of hearing that review should be conducted.

I

Defendant, Victor McCrary, was indicted for purposeful or knowing murder, *N.J.S.A.* 2C:11–3a(1), (2); aggravated assault, *N.J.S.A.* 2C:12–1b(1); unlawful possession of a handgun, *N.J.S.A.* 2C:39–5b; and possession of a firearm with a purpose to use the weapon unlawfully, *N.J.S.A.* 2C:39–4a.

Statements taken from witnesses disclosed that on January 2, 1983, Lavon Jackson, Barbara Frye, and the deceased, Willie Jones, were present with others at Harold Glass's East Orange apartment. At approximately 8:00 p.m. the defendant, Victor McCrary, and an unidentified companion arrived at the apartment. An altercation ensued between Glass and defendant that ended with McCrary leaving the apartment.

At approximately 11:00 p.m. there was a knock at the apartment door. Willie Jones and a man described as "Poochie" went to answer it. Ignoring Glass's warning, Willie Jones opened the door, whereupon he was killed by a bullet fired into his forehead at point-blank range. A second bullet struck Glass in the abdomen. Two other bullets were fired, one into the molding of the apartment door and the other into a wall near a bathroom to which Barbara Frye had fled.

Through the use of photographic arrays, the witnesses identified McCrary as the gunman. Although all the witnesses agreed that when Jones opened the door, McCrary opened fire immediately, the report of the incident furnished by the East Orange police contained Glass's statement that before the shooting started, McCrary said, "This is a hold up." In a subsequent statement given to the police Glass failed to make any mention of the alleged attempted robbery.

Pursuant to the procedure set forth in *N.J.S.A.* 2C:11–3c(2) and Rule 3:13–4(a), the State gave notice prior to trial of its intention to prove at the sentencing proceeding the following

aggravating factors to support the imposition of a death sentence:

> In the commission of the murder, the defendant purposely or knowingly created a grave risk of death to another person in addition to the victim;
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> The offense was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery * * *.
>
> [*N.J.S.A.* 2C:11-3c(4)(b), (g).]

Defendant moved to strike these aggravating factors as "totally unsupported by the evidence." In response the State argued that prosecutorial charging discretion foreclosed the trial court from exercising jurisdiction.

The trial court rejected this contention, ruling that it could appropriately exercise jurisdiction to review the sufficiency of aggravating factors that the State intends to prove at the sentencing proceeding. It ordered a hearing as to the sufficiency of the proof of aggravating factors, indicating that the parties could introduce testimony at the hearing if they were unable to stipulate what that testimony would reveal. The standard would be the same as that applicable to motions to dismiss indictments—that is, no aggravating factor would be dismissed unless evidence were clearly lacking to support the factor challenged. The court ruled further that the State would bear the burden of submitting proof that evidence to support an aggravating factor was not clearly lacking. The defense could conduct limited cross-examination directed at determining whether the State had submitted *prima facie* proof of those aggravating factors of which the prosecution had given notice. Finally, the court ruled that credibility would not be an issue in cross-examination, and that hearsay would be admissible.

The Appellate Division granted the State's motion for leave to appeal from the order for a hearing and defendant's cross-motion for leave to appeal from so much of the order as permitted the introduction of hearsay evidence. We certified the cause directly, 95 *N.J.* 228 (1983), and, subject to the

modification set forth below, now affirm. As a cautionary note we add that our willingness to entertain this appeal and cross-appeal carries with it no implication of any view on questions of constitutionality or statutory interpretation not squarely presented by these proceedings.

## II

In opposing the hearing ordered by the trial court the State contends that the court "lacks the power" to make a pretrial determination of the sort envisioned by the order; and that even if the court has the power to review a prosecutor's decision to notify a defendant of his intention to prove an aggravating factor, nevertheless "that review should be limited to a consideration of the information upon which the prosecutor acted and a determination of whether the prosecutor's decision constitutes a gross and patent abuse of his discretion."

The prosecutor's obligation to give independent notice of any aggravating factors he intends to prove at a capital sentencing proceeding arises "at such time as he has knowledge of the existence" of those factors. *N.J.S.A.* 2C:11–3c(2). When notice is given, it must be accompanied by "all discovery bearing on" the aggravating factors. *R.* 3:13–4(a). This Rule was adopted in September 1982 to provide for additional discovery in capital cases. *Pressler, Current N.J. Court Rules,* Comment *R.* 3:13–4.

As to the intent of the notice provisions of the Code, the legislative history is uninformative beyond disclosing a purpose of avoiding delays and furnishing a defendant adequate time within which to prepare a defense. Because the legislation is silent as to a hearing, the State contends that the judiciary lacks jurisdiction to review the State's allegation of aggravating factors until after the sentencing phase of a capital case— that is, the traditional after-the-event appellate review. To permit a pretrial evidentiary hearing, argues the State, amounts to a breach of separation of powers.

At the outset we recognize a difference in impact between subject matter jurisdiction and the separation-of-powers doctrine. Without subject matter jurisdiction our consideration of the case would be "wholly and immediately foreclosed." *Baker v. Carr,* 369 *U.S.* 186, 198, 82 *S.Ct.* 691, 700, 7 *L.Ed.*2d 663, 674 (1962), *quoted in Gilbert v. Gladden,* 87 *N.J.* 275, 281 (1981) (holding governor's "pocket veto" presents a nonjusticiable political question). Separation of powers, however, takes us beyond the issue of jurisdiction over the controversy to the question of whether the exercise of jurisdiction in a particular case encroaches upon powers constitutionally entrusted to another branch of government. When we have found that such power is properly reposed elsewhere, we have stayed our hand. *See, e.g., Gilbert v. Gladden, supra,* 87 *N.J.* 275; *Peper v. Princeton Univ. Bd. of Trustees,* 77 *N.J.* 55 (1978). *See generally* Gibbons, "The Interdependence of Legitimacy," 5 *Seton Hall L.Rev.* 435, 436 (1974) (separation of powers contemplates a dispersal of decisional responsibility in the exercise of each power).

In this case we harbor no doubts about our jurisdiction to address the issues presented, nor do we hesitate to exercise that jurisdiction. Under the New Jersey Constitution "judicial power" is vested in this Court and all inferior courts. *N.J. Const.* (1947), art. VI, § 1, para. 1. That power has been construed as the repository of the judicial authority to fashion remedies. *See State v. Leonardis,* 73 *N.J.* 360, 369 (1977). In no context is this judicial power to fashion remedies more appropriately exercised than in a criminal case. *See, e.g., State v. Carter,* 64 *N.J.* 382, 392 (1974).

When a criminal proceeding takes on the character of a capital case, the exercise of such authority is not only tenable, it is absolutely imperative to ensure fundamental fairness to a defendant. There is a qualitative distinction between death and imprisonment. "Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a

specific case." *Woodson v. North Carolina,* 428 *U.S.* 280, 305, 96 *S.Ct.* 2978, 2991, 49 *L.Ed.*2d 944, 961 (1976). A healthy sensitivity to this distinction militates against prejudicing a defendant by the unwarranted injection of the possibility of a death sentence in a homicide proceeding.

■ The State urges that the failure of the Legislature or this Court to provide expressly for pretrial review of aggravating factors is a sure indicator of the absence of our power to fashion such a procedure. But as pointed out in *State v. Carter, supra,* 64 *N.J.* at 392, "[t]he fact that the legislature has acted to provide a remedy does not mean that the judicial branch is limited to the boundary lines of strict legislative expression in fashioning or denying remedies in a particular case." Equally clearly, the fact that the Legislature has not spoken at all to the subject of pretrial review cannot shut the courts out of the field. This is particularly so given the function and significance of the prosecutor's notice of an aggravating factor: by such notice alone a homicide case is transformed into a capital proceeding. The Code contains no requirement for a probable cause determination of whether a homicide case should proceed as a capital cause. The prosecutor's notice triggers both the death qualification of the jury and the separate sentencing phase of *N.J.S.A.* 2C:11–3c(1). To that extent the notice functions as a pleading—one with momentous effects. Without notice and proof of an aggravating factor, there can be·no death penalty.

■ Because of these portentous consequences the prosecutor cannot be entirely insulated in the decision to allege aggravating factors. The fact that the presence of an aggravating factor is the sole determinant of whether the case shall proceed as a capital trial is enough to invoke the judicial process. Some judicial oversight is required to ensure at the very least that the proceeding contemplated by the prosecutor's notice not be set in motion without justifiable cause.

Our conclusion in this regard, approving in limited circumstances—not "mandating" (see *post* at 149) (O'Hern, J., dissenting))—pretrial review, is buttressed by the need to preserve judicial and administrative resources. Both the statutory framework and the limited experience of trial courts under the Code suggest that cases in which the death penalty is sought exact enormous commitments of time and resources. *See State v. Timmons*, 192 *N.J.Super.* 141 (Law Div.1983). Tactical considerations—the filing of numerous pretrial motions and the search for evidence casting doubt on the aggravating factors—take on increased importance in the wake of the notice called for by *N.J.S.A.* 2C:11–3c(2). In addition, death qualification of jurors and an entirely distinct sentencing phase are required once the prosecutor gives notice of intent to prove aggravating factors, assuming the notice survives any motion to strike (of course, if the aggravating factors are stricken without prejudice (see *infra* at 145), the case goes forward with a non-death-qualified jury). Preparation for this phase—the extensive investigation into the defendant's background and the gathering of proof for presentation in mitigation—is unique to the capital trial. These factors, in addition to the paramount notion that the specter of death should not hang over the head of an accused without some basis in fact, persuade us that some judicial scrutiny of prosecutorial charging is necessary. *See State v. Sainvallier*, (Law Div.1984) (slip op. at 2–3). The absence of a specific court rule expressly authorizing such a procedure does not stand as a barrier to our structuring a vehicle to provide for such scrutiny, *see In re W.C.*, 85 *N.J.* 218, 224 (1981), particularly where, as here, our purpose is to advance what we perceive to be the legislative intent.

### III

The procedure fashioned by the trial court for judicial oversight of aggravating factors was patterned after the familiar "Wade" hearings (*United States v. Wade*, 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967)). See Rule 3:13–1(b): "Hear-

ings to resolve issues relating to the admissibility of statements by defendant, pretrial identifications of defendant and sound recordings may be held at any time prior to trial and, upon a showing of good cause, hearings as to the admissibility of other evidence may also be so held." However, the trial court ruled that "[u]nlike a 'Wade' hearing, the State will have the burden of submitting proof that evidence concerning the aggravating factors is not clearly lacking."

It is in this regard that we modify the order from which the appeal is taken. Remaining respectful of and sensitive to a prosecutor's charging discretion, we seek to fetter it only to the extent necessary to protect a defendant's rights. Historically, a prosecutor has been vested with broad discretionary powers to be exercised in the conscientious discharge of the manifold responsibilities of his office. *See State v. Laws,* 51 *N.J.* 494, 510, *cert.* denied, 393 *U.S.* 971, 89 *S.Ct.* 408, 21 *L.Ed.*2d 384 (1968); *State v. LeVien,* 44 *N.J.* 323, 326–27 (1965); *cf. State v. Winne,* 12 *N.J.* 152, 174 (1953) (prosecutor has obligation to exercise discretion in good faith). The effect of this broad grant of power has been to accord a presumption of validity to the conduct of the prosecutor. *See In re Investigation Regarding Ringwood Fact Finding Comm.,* 65 *N.J.* 512, 516 (1974); *State v. Laws, supra,* 51 *N.J.* 494.

Our goal is to effect only a minimal intrusion into this area of prosecutorial discretion. The *amicus,* Attorney General, offers a workable solution to achieving that result by analogy to the standard for dismissal of indictments: the presumption in favor of the charges set forth in an indictment requires a defendant who challenges its sufficiency to demonstrate that evidence is clearly lacking to support the charge. *See State v. Weleck,* 10 *N.J.* 355, 364 (1952); *State v. Ferrante,* 111 *N.J.Super.* 299, 304 (App.Div.1970); *State v. Donovan,* 129 *N.J.L.* 478, 483 (Sup.Ct. 1943).

That standard accurately strikes the balance in the present context between prosecutorial discretion and fairness to the

defendant. Like the indictment, the notice of aggravating factors is the turn-key to a capital prosecution. Implicit in both is the notion that the allegations derive from some verifiable source. The need to ensure that such a source exists compels some preliminary review to satisfy the interest of the public and the defendant that such charges not proceed to trial without a factual mooring. Important to note at this juncture is the fact that this limited review is engaged at the initial stages of the proceedings; Rule 3:13–4 requires the prosecutor to furnish defendant with all discovery bearing on the aggravating factors "at arraignment unless the time to do so is enlarged for good cause", and "[t]he duty to disclose the discovery relevant to the existence of aggravating * * * factors shall be a continuing one." *R.* 3:13–4(c).

We are unpersuaded by the State's contention that a scheme for pretrial review of aggravating factors forces the State to prove its case three times: at a pretrial hearing, at the trial itself, and at the sentencing procedure required under *N.J.S.A.* 2C:11–3c.[1] The procedure we envision does not require the prosecutor to prove his case before trial. It does no more than serve to assure that there is some evidence that justifies the submission of the specified aggravating factors to the trier of fact at the sentencing phase of the case, which may or may not be conducted before the same jury that determines guilt (depending on whether the prosecutor has given notice of aggravating factors before commencement of the guilt phase of the case and the notice has survived any defense motion to strike. See *N.J.S.A.* 2C:11–3c.).

---

[1]The statute requires "a separate sentencing proceeding to determine whether the defendant should be sentenced to death * * *." *N.J.S.A.* 2C:11–3c(1). When trial of the defendant is by jury, the judge and that jury determining guilt shall determine the penalty. An exception "for good cause" exists, by which that jury may be discharged and a new one impanelled for the purpose of the sentencing proceeding.

The procedure contemplated by this opinion is directed to the discretion of the trial court. It has long been the law of this state that a motion to quash an indictment is addressed to the discretion of the court, *see, e.g., State v. Then,* 114 *N.J.L.* 413, 416 (Sup.Ct.1935), and that the power to dismiss an indictment is not properly exercised except on "the clearest and plainest ground." *State v. Davidson,* 116 *N.J.L.* 325, 328 (Sup.Ct.1936), *quoted in State v. Weleck, supra,* 10 *N.J.* at 364. In the context of the issue posed by this case, application of that rule will generally favor a summary review of the evidence upon which the prosecutor relied in charging any aggravating factor. *See State v. Sainvallier, supra,* (slip op. at 3). We recognize, however, that in some limited circumstances the trial court may, in its discretion, order that testimony be presented. Without attempting to delineate the rare types of cases in which that step may legitimately be taken, we emphasize that an order for the production of testimony will be the exception to the rule, seldom to be employed and then only as a means to smoke out the support for what appear to be transparently frivolous factual allegations. We expect trial courts to be sensitive to the jury function and to disallow submission to the jury of aggravating factors only where a reasonable fact-finder could not conclude that an aggravating factor exists.

Moreover, the State is free, under our decision today, to reassert a dismissed aggravating factor—that is, the striking of aggravating factors is to be without prejudice to a later application for their introduction should additional supporting evidence come to light. Of course, if that should occur during the guilt phase of the trial, the newly-discovered evidence tending to support an aggravating factor would be inadmissible *as an aggravating factor,* although conceivably it would be admissible on some other basis. If a new aggravating factor, or evidence reinforcing a previously-stricken aggravating factor, surfaces during the guilt phase, or even immediately thereafter but before commencement of the sentencing phase, then upon its discovery the prosecutor would be required to give notice to

defendant and, again assuming the aggravating factor is not stricken, the sentencing phase would proceed before a death-qualified jury. If, under these latter circumstances, the guilty verdict had been returned by a non-death-qualified jury, then the sentencing phase would have to go forward with a newly-impanelled, death-qualified jury. We conclude that the foregoing scenario would satisfy the statutory provision for a second jury for "good cause," as set forth in *N.J.S.A.* 2C:11–3c(1).

We note with approval the limited nature of review that California courts have accepted in their capital penalty statutory scheme. In *Ghent v. Superior Court of Santa Clara County*, 90 *Cal.App.*3d 944, 956, 153 *Cal.Rptr.* 720, 727–28 (Ct.App.1979), the court allowed pretrial review of evidence supporting "special circumstances" that justify the imposition of the death penalty. California's statute, *Cal.Penal Code* § 190.2, is clearly distinguishable from the New Jersey statutory scheme, in that it requires that special circumstances be alleged in the accusatory pleading presented by a grand jury. Despite this distinguishing feature, the California approach is noteworthy for its adoption of a narrow scope of review of evidence of a special circumstance. *Id.* 153 *Cal.Rptr.* at 727–28: evidence will be sufficient if it shows "some rational ground" in favor of an information.

We are aware that our decision today may be construed as encouraging frivolous pretrial motions to dismiss aggravating factors. At this point we simply stress that such motions should be made only when the allegations of aggravating factors are plainly without support. It is hardly necessary to observe that we discourage the assertion of groundless motions made in hopes of discrediting well-founded allegations of aggravating factors.

## IV

Finally, we address defendant's cross-appeal directed to hearsay evidence at a pretrial review of the aggravating fac-

tors.  Defendant argues that the trial court incorrectly found such evidence admissible—that since such evidence would be excluded at trial, it cannot be considered by the trial court at any pretrial hearing.

Once again we turn for guidance to the procedures employed in challenges to the sufficiency of an indictment.  For over a century the rule recognized as controlling the review powers of courts over indictments when a question of competence of the evidence arises has been that stated in *State v. Dayton*, 23 *N.J.L.* 49, 57 (Sup.Ct.1850):

> [C]onceding that the proposition is fully established, that there was not legal and competent evidence before the grand jury, does that afford the subject matter to sustain either a motion to quash or a plea in abatement?  We are clearly of the opinion, that in this state, at least, it does not.

This rule is consistent with United States Supreme Court decisions that recognize that hearsay and other informal proofs are permissible in determining issues that implicate important rights.  *See Costello v. United States*, 350 *U.S.* 359, 363, 76 *S.Ct.* 406, 408, 100 *L.Ed.* 397, 402–03, reh. denied, 351 *U.S.* 904, 76 *S.Ct.* 692, 100 *L.Ed.* 1440 (1956) (an indictment may be returned on basis of hearsay); *see also Gerstein v. Pugh*, 420 *U.S.* 103, 120–21, 95 *S.Ct.* 854, 866–67, 43 *L.Ed.*2d 54, 69 (1975) (hearsay admissible at probable cause hearings); *United States v. Matlock*, 415 *U.S.* 164, 174, 94 *S.Ct.* 988, 994, 39 *L.Ed.*2d 242, 252 (1974) (search warrant may be obtained on basis of hearsay).

Our conclusion to allow hearsay evidence in support of any aggravating factor squares with the notion that the proof of facts is ultimately preserved for trial.  *See State v. Ferrante, supra,* 111 *N.J.Super.* at 305–06.  The admission of hearsay at a pretrial proceeding directed to determining whether there is a minimal level of evidence available to support the prosecutor's allegations is likewise consistent with the deference to the prosecutorial charging function that we are determined to preserve.

## V

In sum, we hold that the trial court may review a prosecutor's allegation of the aggravating factors enumerated in *N.J. S.A.* 2C:11–3c(4). That review should generally be conducted through summary proceedings, although it remains discretionary with the court to require the production of testimony. Hearsay evidence is admissible in pretrial review proceedings. A defendant who challenges the sufficiency of the evidence to support an aggravating factor bears the burden of proving that contention. Dismissal of an aggravating factor for lack of supporting evidence is without prejudice. Defense motions to strike an aggravating factor should be brought only when the supporting evidence is so thin, so lacking, so weak as to leave no room in the minds of a reasonable fact-finder as to the existence of that aggravating factor.

As modified, the order appealed from is affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

HANDLER, J., concurring.

I concur in the judgment of the Court. I am satisfied generally to resolve the issue in this case under the standards expressed in the Court's opinion. However, I entertain some reservations as to the ostensible looseness of the evidential requirements imposed by the Court on the prosecutor. The standards articulated by the Court assuredly should not be understood to permit or encourage prosecutors to convert homicide cases into capital prosecutions without a sound evidential basis. With respect to necessary judicial oversight, I have a similar concern over our adoption by analogy of the standard governing proceedings to dismiss indictments. While that standard is generally serviceable in this context, it should be understood that judicial review of prosecutorial decisions in this area should give explicit recognition to the inherent limitations upon prosecutorial discretion, since the exercise of that discretion

itself triggers the machinery of the criminal justice system that may ultimately result in the death penalty. I think it is fairly implicit that the court's review of a prosecutor's determination to proceed by way of a capital prosecution based upon an alleged aggravating factor must focus upon whether the determination is arbitrary or capricious or an abuse of prosecutorial discretion. Further, a prosecutor, in the pretrial notification to a defendant of an aggravating factor, need not be relegated to the use of evidence that necessarily satisfies strict or conventional rules of admissibility. Nevertheless, if any hearsay is used or presented to project an aggravating factor, such evidence should be critically assessed by the court, and disregarded if too attenuated or only marginally reliable.

I express my position summarily and separately because neither the Court nor any of its members has yet considered the constitutionality of the capital provisions of the New Jersey Code of Criminal Justice (Code). There are several capital cases pending both at the trial level and on appeal before us—and their numbers are growing—that will present directly a plethora of issues implicating the constitutional validity of the capital provisions of the Code, as well as countless legal, statutory and procedural questions touching the validity, interpretation and application of these new criminal laws. I concede that it makes sense for the Court to adjudicate and resolve the question in this case at this time. Our interlocutory decision will at the very least settle for the moment the question of the appropriate procedural handling of an important threshold aspect of homicide prosecutions—whether the prosecution shall proceed as a capital case that can eventuate in the imposition of the death penalty. To this extent our decision lends greater certainty and—dare we hope?—uniformity and consistency in the trial of capital causes and, perhaps, will obviate consideration of this issue in later appeals.

Still, our interim disposition of this issue in a way puts the cart ahead of the horse. It should be very clear, therefore, that our decision on this narrow pretrial question, rendered at an

interlocutory stage, in no way foreshadows judicial views on other issues, including constitutional ones, that will be addressed in capital cases reaching us later.

O'HERN, Justice, dissenting.

I disagree that we should mandate pretrial review of the validity of the aggravating factors furnished under Rule 3:13-4(a) prior to a capital trial. I do so because the sentencing structure of *N.J.S.A.* 2C:11-3 does not call for it and because of the potential long-term effect of the practice on our ability to afford the proportionality review now mandated by *N.J.S.A.* 2C:11-3(e).

Until the Supreme Court's decision in *Furman v. Georgia* in 1972, the capital sentencing procedures in most states delegated to judges and juries plenary authority to decide when a death sentence should be imposed. The sentencer was given "practically untrammeled discretion to let an accused live or insist that he die." *Furman v. Georgia*, 408 *U.S.* 238, 248, 92 *S.Ct.* 2726, 2731, 33 *L.Ed.*2d 346, 355 (1972) (Douglas, J., concurring). In New Jersey, we believed that such standards were not clearly definable. *State v. Johnson*, 34 *N.J.* 212, 230 (1961).

In *Furman* the Court held that the system of capital punishment then in existence in this country was incompatible with the eighth and fourteenth amendments. The teaching of *Furman* was that a state may not leave the decision whether a defendant lives or dies to the unfettered discretion of the jury, since such a scheme inevitably results in death sentences that are "wantonly and * * * freakishly imposed," and "are cruel and unusual in the same way that being struck by lightning is cruel and unusual." 408 *U.S.* at 309-10, 92 *S.Ct.* at 2762-63, 33 *L.Ed.*2d at 390 (Stewart, J., concurring).

Four years after *Furman*, the Court upheld the capital sentencing statutes of Texas, Florida, and Georgia, concluding that those statutes contained safeguards that promised to eliminate the constitutional defects found in *Furman. Jurek v.*

*Texas,* 428 *U.S.* 262, 96 *S.Ct.* 2950, 49 *L.Ed.*2d 929 (1976); *Proffitt v. Florida,* 428 *U.S.* 242, 96 *S.Ct.* 2960, 49 *L.Ed.*2d 913 (1976); *Gregg v. Georgia,* 428 *U.S.* 153, 96 *S.Ct.* 2909, 49 *L.Ed.* 2d 859 (1976). The Court's conclusion was based on the premise that the statutes ensured that sentencers would be "given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." *Gregg v. Georgia, supra,* 428 *U.S.* at 192, 96 *S.Ct.* at 2934, 49 *L.Ed.*2d at 885 (opinion of Stewart, Powell, and Stevens, JJ.). Georgia's scheme included two features that Justice Stewart described in his general discussion of sentencing procedures that would guide and channel the exercise of discretion. Georgia had a bifurcated procedure, *id.* at 190–92, 96 *S.Ct.* at 2933–34, 49 *L.Ed.*2d at 884–85, and its statute also required "the further safeguard of meaningful appellate review" of every death sentence. *Id.* at 195, 96 *S.Ct.* at 2935, 49 *L.Ed.*2d at 886–87.

In *Zant v. Stephens,* 462 *U.S.* 862, 103 *S.Ct.* 2733, 77 *L.Ed.* 2d 235 (1983), the Court explained that no specific set of procedures has been set down to "satisfy the concerns of *Furman.*" *Id.* at ——, 103 *S.Ct.* at 2741, 77 *L.Ed.*2d at 248. What it found significant was that the "Georgia scheme provide[d] for categorical narrowing at the definition stage, and for individualized determination and appellate review at the selection stage."[1] *Id.* at ——, 103 *S.Ct.* at 2744, 77 *L.Ed.* at 251.

---

[1] The categorical narrowing must be based on standards that will withstand a claim of vagueness. *Cf. Godfrey v. Georgia,* 446 *U.S.* 420, 100 *S.Ct.* 1759, 64 *L.Ed.*2d 398 (1980) (plurality opinion) (state definition of aggravating circumstance, "outrageous or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim," held invalid because as applied it was so vague that it would not distinguish one murder from another). But that is not the challenge before us. The challenge here goes to the proofs that underlay the factors. Further, what is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime. *See Eddings v. Oklahoma,* 455 *U.S.* 104, 110–12, 102 *S.Ct.* 869, 873–74, 71 *L.Ed.*2d 1, 8–9 (1982);

Without prejudging issues not yet before us, I believe that the Legislature has "attempted to provide standards for a constitutional death penalty that would serve both goals of measured, consistent application and fairness to the accused." *Eddings v. Oklahoma,* 455 *U.S.* 104, 111, 102 *S.Ct.* 869, 874, 71 *L.Ed.*2d 1, 8 (1982). The sentencing scheme provides a bifurcated proceeding, instruction on the factors to be considered, and appellate review of each death sentence.[2] These were features mentioned in the opinion of Justices Stewart, Powell, and Stevens in *Gregg v. Georgia, supra,* 428 *U.S.* at 190–95, 96 *S.Ct.* at 2933–36, 49 *L.Ed.*2d at 884–87.

In the terms outlined in *Zant, supra,* —— *U.S.* at ——, 103 *S.Ct.* at 2744, 77 *L.Ed.*2d at 251:

    1. The "categorized narrowing" is provided by limiting the capital punishment to murders specified in *N.J.S.A.* 2C:11–3 and by requiring the presence of at least one of the aggravating factors set forth in 2C:11–3(c)(4); and

    2. The "individualized determination" is provided by requiring that every person convicted in the categories of murder as defined in 2C:11–3 should be sentenced by the jury.

The language of the statute is stark in its simplicity. Every person so convicted shall be sentenced by a jury in accordance with the defined standards of aggravating and mitigating factors.[3]

---

*Lockett v. Ohio,* 438 *U.S.* 586, 601–05, 98 *S.Ct.* 2954, 2963–65, 57 *L.Ed.*2d 973, 987–90 (1978) (plurality opinion); *Roberts v. Louisiana,* 431 *U.S.* 633, 636–37, 97 *S.Ct.* 1993, 1995–96, 52 *L.Ed.*2d 637, 641–42 (1977) (*per curiam*); *Woodson v. North Carolina,* 428 *U.S.* 280, 303–04, 96 *S.Ct.* 2978, 2990–91, 49 *L.Ed.*2d 944, 960–61 (1976) (plurality opinion); *Proffitt v. Florida,* 428 *U.S.* 242, 251–52, 96 *S.Ct.* 2960, 2966–67, 49 *L.Ed.*2d 913, 922 (1976) (opinion of Stewart, Powell, and Stevens, JJ.); *Gregg v. Georgia,* 428 *U.S.* 153, 197–98, 96 *S.Ct.* 2909, 2936–37, 49 *L.Ed.*2d 859, 888 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

[2]Our Constitution, *N.J. Const.* (1947), art. VI, § 5, para. 1(c), also provides for Supreme Court review in capital cases.

[3]Throughout the opinion I have referred to juries as imposing the death sentence. However, when a defendant pleads guilty or is tried without a jury,

The statute itself makes no provision that the aggravating factors be furnished prior to the guilt phase of the trial. *N.J.S.A.* 2C:11–3(c)(2) provides: "Prior to the commencement of the sentencing proceeding, or at such time as he has knowledge of the existence of an aggravating factor, the prosecuting attorney shall give notice to the defendant of the aggravating factors which he intends to prove in the proceeding." It is our Rule 3:13–4(a) that requires the prosecutor to transmit the aggravating factors and supporting discovery at the time of arraignment. While the majority's view seems to be fair, we must ask ourselves whether it will best serve to "minimize the risk of wholly arbitrary and capricious action." *Gregg, supra,* 428 *U.S.* at 189, 96 *S.Ct.* at 2932, 49 *L.Ed.*2d at 883 (opinion of Stewart, Powell, and Stevens, JJ.). I have concluded that pretrial screening does not best serve that purpose.

I reach that conclusion because I know of no way in which we can factor the result of such pretrial decisions into our overall duty to review the proportionality of capital sentences. I recognize that the Supreme Court has recently held that comparative proportionality review by an appellate court is not constitutionally required in every death penalty case. *Pulley v. Harris,* —— *U.S.* ——, 104 *S.Ct.* 871, 79 *L.Ed.*2d 29 (1984). I also realize that pending legislation, S. 1479, 201st Leg. (1984), seeks to do away with the statutory proportionality review. Still we must deal with the statute as we find it.

Experience under our state's prior death penalty law suggested that judges had no special ability to measure that common conscience of society that must be invoked in these cases. Chief Justice Weintraub sharply distinguished between the power of court and prosecutor in this regard:

> [W]e have never held a trial court may take the penalty issue from the jury on the thesis that the evidence would not support a death sentence * * *.

>        *        *        *        *        *        *        *        *

---

the death phase may be conducted by the judge sitting alone if the defendant and the prosecutor so agree. *N.J.S.A.* 2C:11–3(c)(1); *R.* 1:8–1(a).

Because the death penalty involves a moral judgment upon a consideration of the evidence, free of legalisms and unbridled with respect to the values which may be brought to bear, it may readily be said that the judgment of 12 laymen in any given case is as good as the judgment of an equal number of men schooled in the law. [*State v. Conyers*, 58 *N.J.* 123, 147–48 (1971) (Court may impose life sentence after appeal when prosecutor recommends it rather than retrial).]

Granted that jurors' discretion is no longer unbridled, it remains true that the judgment involved does not lend itself to better analysis by judge than jury.

Our Legislature has sought to create a death penalty law that comports with federal constitutional precedent. It has narrowed discretion. It has provided that every person convicted of the categories of murder defined in 2C:11–3(a) shall be sentenced by juries and juries alone. The prosecutor has been vested with broad discretionary powers to be exercised in the conscientious discharge of the manifold responsibilities of the office. *State v. Laws*, 51 *N.J.* 494, 510, *cert.* denied, 393 *U.S.* 971, 89 *S.Ct.* 408, 21 *L.Ed.*2d 384 (1968). Considerations of separation-of-powers are invoked when a prosecutor decides whether to seek the death penalty. *Cf. State v. Leonardis*, 73 *N.J.* 360 (1977) (decision of prosecutor to admit defendant to pretrial intervention program has separation-of-powers implications).[4]

---

[4]Even on the score of prosecutorial discretion to waive the death penalty, Justice Francis came to believe that the Court's administrative directive on the subject, entitled *In Re Waiver of Death Penalty*, 45 *N.J.* 501 (1965), was wrong:

I joined in that directive. But the more exhaustive study of the problem made in this case convinces me that we were wrong and that the directive was an encroachment on the independent power of the Legislature. Under the circumstances, in my judgment it should be withdrawn and the rule of *State v. Pontery* [19 *N.J.* 457 (1955) ] revived. A sound view on the subject was expressed by the Washington Supreme Court in *White v. Rhay* [64 *Wash.*2d 15, 390 *P.*2d 535 (1964) ], *supra*, 390 *P.*2d, at *p.* 540:

"Petitioner is mistaken when he assumes that infliction of the death penalty in trials involving capital cases is in any way discretionary with the prosecuting attorney, or his deputies, conducting the trial for the state. Such discretion vests neither in counsel nor the court, but solely in the

Within our sphere, I believe that the fairest and best course is to hew closely to the pattern of the act. The act provides that all persons convicted of knowing or purposeful 2C:11–3 murders shall be sentenced by the jury using the procedure set forth in subsection (c) of the statute. Moreover, subsection (d) of the statute says "[t]he sentencing proceeding set forth in subsection c. of this section shall not be waived by the prosecuting attorney." The act provides that the prosecutor shall furnish the defendant with a statement of the aggravating factors that are to be proven. The act does not provide that the cases shall be screened before the jury imposes sentence. I respectfully do not believe that such screening will make the imposition of capital punishment less arbitrary. I believe that it will, in the long run, make more difficult our duty of proportionality review under *N.J.S.A.* 2C:11–3(e).

HANDLER, J., concurring in the result.

*For modification, affirmance and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLACK and GARIBALDI—6.

*Dissenting*—Justice O'HERN—1.

jury. The jury and the jury alone makes this finding." [*State v. Laws, supra,* 51 *N.J.* at 553 (Francis, J., dissenting).]